**James LOUDERMILL, Plaintiff-Appellant,**

**v.**

**CLEVELAND BOARD OF EDUCATION, et al., Defendants-Appellees.**

**Richard DONNELLY, Plaintiff-Appellant,**

**v.**

**PARMA BOARD OF EDUCATION, et al., Defendants-Appellees.**

**Nos. 82-3227, 82-3226.**

United States Court of Appeals, Sixth Circuit.

Argued April 26, 1983.

Decided Nov. 17, 1983.

John W. Hickey (Lead Counsel), Robert M. Fertel (argued), Hickey Legal Clinic, Cleveland, Ohio, for plaintiff-appellant in both cases.

William J. Brown, Atty. Gen. of Ohio, Columbus, Ohio, James G. Wyman (argued), D. John Travis, Stuart A. Friedman (argued), James E. Young, Cleveland, for defendants-appellees in No. 82–3227.

John T. Meredith (argued), Squire, Sanders & Dempsey, Stanley Keller, William Scully (argued), Keller & Scully, James E. Young, Stuart A. Friedman, Cleveland, Ohio, for defendants-appellees in No. 82–3226.

Before MERRITT, WELLFORD and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge.

Appellants James Loudermill and Richard Donnelly, both classified civil service em-

* Of the Second Circuit, by designation.

ployees under Ohio Rev.Code Ann. § 124.34 (Page 1978), commenced the instant civil rights actions after being discharged by their municipal employers.[1] In challenging the propriety of their respective discharges, the two employees alleged that their employers' failure to afford them an opportunity before dismissal to present evidence on their own behalf, as well as a prompt post-termination hearing, violated their rights to procedural due process under the Fourteenth Amendment. The District Court for the Northern District of Ohio, John M. Manos, District Judge, held that neither Fourteenth Amendment allegation raised a cognizable claim, i.e., that no pre-termination process was due and that the delay in the post-termination hearings was not excessive. Appellees urge that we affirm on the basis of the district court's analysis. Alternatively, appellee Cleveland Civil Service Commission urges us not to reach the merits of Loudermill's claim because of his failure to exhaust state remedies, and appellee Parma Civil Service Commission urges that Donnelly's action is barred by res judicata.

For the reasons stated below, we hold that the exhaustion and res judicata claims do not preclude us from reaching the merits of these appeals. With respect to the post-termination due process claims, we agree with the district court that the delays in granting the post-termination hearings did not rise to constitutional violations. With respect to the pre-termination due process claims, however, we hold that, because of the statutory protections afforded civil service employees under § 124.34, a municipality must provide its employees some opportunity to present evidence on their own behalf prior to discharge. Accordingly, we affirm in part, and vacate and remand in part for further proceedings.

I.

LOUDERMILL ACTION (No. 82-3227)

Loudermill was employed as a security guard by a private firm that supplied guards to the Cleveland Board of Education. After the private firm declared bankruptcy in 1979, many of the guards, including Loudermill, applied for similar positions with the Board of Education. As part of the application, applicants were asked, "Have you ever been convicted of a crime (felony)?" Loudermill responded "No". At the end of his application, he signed the following certification:

> "I certify that all the statements made by me in this application are true, complete and correct to the best of my knowledge and that I am aware that any false statements will be sufficient cause for dismissal from or refusal of an appointment for any position with the Cleveland Board of Education."

The Board of Education accepted Loudermill's application on September 25, 1979. He commenced work immediately thereafter. As a classified civil service employee under § 124.34, he could be discharged only for "cause". In the event of discharge, the statute required that a trial board be appointed to hear any appeal within thirty days.[2]

1. Included as appellees in Loudermill's action are the Cleveland Board of Education and its president, John Gallagher; the City of Cleveland and its Mayor, George Voinovich; the Cleveland Civil Service Commission and its president, Thomas R. Skulina; and Ohio's Attorney General, William J. Brown. Included as appellees in Donnelly's action are the Parma Board of Education and its president, Robert Koscielny; the city of Parma and its Mayor, John Petruska; the Parma Civil Service Commission and its chairman, Leo Hepner; and two of its members, Ralph Schell and Donald Narus.

2. Ohio Rev.Code Ann. § 124.34 in relevant part *provides:*

> "The tenure of every officer or employee in the classified service of the state and the counties ... holding a position under this chapter of the Revised Code, shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, suspended, or removed, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty ... or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office....
>
> In any case of reduction, suspension of more than three working days, or removal, the appointing authority shall furnish such em-

After a year of employment, the Board of Education transferred Loudermill to a position with the newly created Department of Safety and Security. A routine examination of all transferees' employment records revealed that Loudermill had been convicted of a felony in 1968.

By a letter dated November 3, 1980, the Business Manager of the Board of Education advised Loudermill that he was being dismissed. The letter explained that the discharge stemmed from his dishonesty in filling out the employment application. He claims that, if he had been afforded an opportunity to respond to the charges before dismissal, he could have presented a meritorious defense to demonstrate his honesty, namely, that, because of the particular circumstances surrounding his 1968 conviction, he believed that he had been adjudged guilty of a misdemeanor rather than a felony.

Loudermill filed a notice of appeal with the Cleveland Civil Service Commission on November 12, 1980. The next day, the Board of Education adopted a resolution officially approving his discharge.

In late January 1981, Loudermill appeared for a hearing before the Cleveland Civil Service Commission. A referee appointed by the Commission, in a report filed April 1, 1981, recommended that Loudermill be reinstated. Without further testimony, the Civil Service Commission rejected the referee's recommendation on July 20, 1981, and affirmed Loudermill's discharge.

In October 1981, Loudermill commenced the instant action under 42 U.S.C. § 1983 (1976 & Supp. IV 1980), seeking monetary, injunctive, and declaratory relief. He alleged that appellees' failure to afford him a pre-termination hearing or an opportunity to respond to the dishonesty charge violated his due process rights to liberty and property. He sought damages and a declaration that § 124.34 was constitutionally invalid for failing to provide an opportunity for classified civil service employees to respond to charges prior to removal. Further, Loudermill alleged that the inordinate delay before his post-termination hearing likewise violated his due process rights. Finally, he sought a mandatory injunction ordering his reinstatement with full backpay.

The district court dismissed Loudermill's action for failure to state a claim upon which relief could be granted. It held that, while Loudermill, under § 124.34, enjoyed a cognizable property interest in continuing employment, due process did not require a pre-termination hearing. The court also held that, since the delay in granting the post-termination hearing was not excessive, the Civil Service Commission's conduct did not violate due process. The court denied a subsequent motion to alter or amend the judgment.

DONNELLY ACTION (No. 82–3226)

Donnelly was employed as a bus mechanic by the Parma Board of Education. He enjoyed the same status as Loudermill under Ohio law, i.e., he was a classified civil service employee who could be terminated only for cause under § 124.34. The Board discharged Donnelly on August 17, 1977 because of his failure to pass an eye examination. The Board previously afforded Donnelly an opportunity to retake the eye examination, but it had not provided him with an opportunity to challenge the dis-

ployee with a copy of the order of reduction, suspension, or removal, which order shall state the reasons therefor. Such order shall be filed with the director of administrative services and state personnel board of review, or the commission, as may be appropriate.

Within ten days following the filing of such order, the employee may file an appeal, in writing, with the state personnel board of review or the commission. In the event such an appeal is filed, the board or commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the board or commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority.

In cases of removal or reduction in pay for disciplinary reasons, either the appointing authority or the officers or employee may appeal from the decision of the state personnel board of review or the commission to the court of common pleas of the county in which the employee resides in accordance with the procedure provided by section 119.-12 of the Revised Code...."

charge. Donnelly claims that, if he had been afforded an opportunity to inform the Board that it still employed another bus mechanic who had failed the eye examination, the Board might have reevaluated the efficacy of the eye examination requirement, have scrutinized more closely the purported reasons for discharging Donnelly, and might not have proceeded with the discharge.

Donnelly filed a notice of appeal with the Parma Civil Service Commission on August 31, 1977. The Commission declined to hold a hearing on the ground that the appeal was untimely, the notice of appeal not having been filed within the ten day period prescribed by § 124.34. Note 2 *supra.* Donnelly argued that the statutory period under Ohio law did not begin to run until the Commission actually received the termination notice (September 9, 1977). Donnelly commenced an action seeking a writ of mandamus in the Cuyahoga County Court of Common Pleas to compel the Commission to commence the hearing. On May 9, 1978, the parties agreed to a writ of mandamus requiring that the Commission hold a hearing within the ensuing thirty day period. After a full evidentiary hearing held on May 30, 1978, the Commission ordered Donnelly reinstated, but made no provision for the award of backpay.[3]

Rather than filing an appeal pursuant to § 124.34, Donnelly commenced an action in the Cuyahoga County Court of Common Pleas seeking damages and backpay from the effective date of his discharge to the time of the Commission's reinstatement order. Donnelly predicated the action on state law claims and alleged deprivation of Fourteenth Amendment rights.

Without opinion, the Court of Common Pleas dismissed the complaint on February 2, 1979. The Cuyahoga County Court of Appeals affirmed on February 22, 1980, on the ground that Donnelly had failed to file an appeal from the Commission's decision in the manner prescribed by § 124.34. Donnelly's petition to the Ohio Supreme Court for review was denied on September 26, 1980.

More than a year later, on October 27, 1981, Donnelly commenced the instant action, alleging denial of due process and equal protection guaranteed under the Fourteenth Amendment.[4] The district court dismissed the complaint sua sponte, holding that, pursuant to its opinion in *Loudermill,* Donnelly had not stated a claim upon which relief could be granted. Donnelly filed a timely notice of appeal. His appeal was consolidated with that in *Loudermill* for the purposes of oral argument and this opinion.

## II.

We turn first to the question whether appellants' failure to exhaust state judicial remedies requires us to dismiss their procedural due process claims. Neither Loudermill nor Donnelly followed the procedure established under Ohio law for appealing adverse administrative determinations. Pursuant to § 124.34, "either the appointing authority or the officers or employee may appeal from the decision . . . of the commission to the court of common pleas of the county in which the employee resides in accordance with the procedures provided by section 119.12 of the Revised Code."

Section 119.12 in relevant part provides:

> "Any party desiring to appeal shall file a notice of appeal with the agency setting forth the order appealed from and the grounds of his appeal. A copy of such notice of appeal shall also be filed by appellant with the court. Unless otherwise provided by law relating to a particular agency, such notices of appeal shall

3. Apparently the Civil Service Commission does not have the power to award backpay. *Hasman v. City of Cleveland,* No. 41568 (Ohio Ct.App.1980); *City of Cleveland v. Dumas,* No. 41192 (Ohio Ct.App.1980); *see State ex rel. Martin v. City of Columbus,* 58 Ohio St.2d 261, 264, 389 N.E.2d 1123, 1125 (1979).

4. Like Loudermill, he predicated his claims on both 42 U.S.C. § 1983 and the Fourteenth Amendment. For convenience we shall refer to both sets of claims as § 1983 actions.

be filed within fifteen days after the mailing of the notice of the agency's order as provided in this section."

Instead of filing notices of appeal, Loudermill commenced this action in the federal court; Donnelly sought damages in the state court after the fifteen day period for filing a notice of appeal had expired. Arguably, if appellants had pursued their appeals properly in the state court as provided in § 124.34, they could have obtained the relief they sought. If we were to require a litigant to exhaust state judicial remedies before instituting a § 1983 action, we might well dismiss the instant appeals.

The Supreme Court, however, made it clear long ago that there is no state judicial exhaustion requirement in § 1983 cases. For example, in *McNeese v. Board of Education,* 373 U.S. 668 (1963), the Court held that a § 1983 claim could not "be defeated because relief was not first sought under state law which provided a remedy." *Id.* at 671. The Court explained that "[w]e would defeat [the underlying purposes of § 1983] if we held that assertion of a federal claim in federal court must await an attempt to vindicate the same claim in a state court." *Id.* at 672.

In rejecting a more recent argument favoring an exhaustion requirement, the Court in *Patsy v. Board of Regents,* 457 U.S. 496 (1982), emphasized that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983. We decline to overturn our prior decisions holding that such exhaustion is not required." *Id.* at 516. By refusing to require exhaustion of even administrative remedies, the Court in *Patsy* left little room for a judicial exhaustion requirement.[5] Indeed, if there were such a requirement, then principles of res judicata and collateral estoppel would bar almost all access to federal courts in § 1983 actions, a result plainly at odds with congressional intent. *Patsy, supra,* 457 U.S. at 502–12;[6] *Allen v. McCurry,* 449 U.S. 90, 99–101 (1980). Plaintiffs seeking to vindicate their constitutional rights, whether substantive or procedural in nature, *United Church of the Medical Center v. Medical Center Commission,* 689 F.2d 693, 697–98 (7th Cir.1982), cannot be deprived of the opportunity to proceed in the federal courts.

III.

Although resort to a state judicial forum may not be a prerequisite to a § 1983 action, appellee Parma Board of Education argues that, once Donnelly invoked the state judicial process and lost, he was barred thereafter from relitigating the underlying claims in any court. In the state court action, Donnelly unquestionably raised claims similar to those asserted in the instant federal court action. He alleged that the lack of a pre-termination hearing violated his due process rights and that the discharge itself violated his equal protection rights.[7] The question therefore is whether

5. We note that the *Patsy* decision is not easily reconcilable with the Court's earlier decision in *Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100 (1981), where the Court left open the possibility of exceptions to the no-exhaustion requirement. *See The Supreme Court, 1981 Term,* 96 Harv.L.Rev. 62, 207–17 (1982). While we believe that *Patsy* has not precluded the possibility of fashioning future exceptions to the no-exhaustion rule, we find that such an exception would be inappropriate in the instant cases where appellants exhausted their administrative remedies. The Court has never even intimated that exhaustion of state judicial remedies in § 1983 cases should be required, as it is in habeas corpus cases. Nor do we believe that the instant actions fall within the range of exceptions contemplated by Justice Brennan in his concurrence in *Fair Assessment. Id.* at 133–37 (Brennan, J., concurring) (federal courts should require exhaustion of state remedies when congressional intent to require exhaustion can be fairly understood from the pertinent legislation).

6. If § 1983 actions were treated similarly to habeas corpus actions, then the problems of preclusion would disappear. In light of the legislative history of § 1983, however, such a change would have to originate with Congress.

7. Donnelly's amended complaint in the state court in relevant part alleges:

"18. The Plaintiff was denied due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution by the Defendants when he was not given any no-

the state court's dismissal of the complaint precludes the instant action under the doctrine of res judicata—sometimes referred to as claim preclusion.

Before we may proceed with the res judicata issue, we must decide whether state or federal law determines the preclusive effect of the prior Ohio court action. We begin by examining the full faith and credit statute, 28 U.S.C. § 1738 (1976), which in relevant part provides:

> ". . . .
>
> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States. . . .
>
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

The statute imposes on us the obligation to give state court judgments the same effect as they have in the state in which they were rendered. If the statute applies to the instant civil rights action, state law would control our resolution of the res judicata question.

The Supreme Court in *Allen v. McCurry, supra,* held that § 1738 governs § 1983 actions and therefore may require federal courts to give a state court judgment preclusive effect, at least on grounds of collateral estoppel or issue preclusion. Despite the special federal interest in providing a forum for civil rights cases, *e.g., Lombard v. Board of Education,* 502 F.2d 631, 635–37 (2d Cir.1974), *cert. denied,* 420 U.S. 976 (1975), § 1983 does not give federal courts a license to federalize the doctrine of issue preclusion. *Allen, supra,* 449 U.S. at 103–05. The Court reviewed the legislative history of § 1983 and concluded that "the history of § 1983 does not in any way suggest that Congress intended to repeal or restrict the traditional doctrine of preclusion," *id.* at 98, and that "much clearer support than this would be required to hold that § 1738 and the traditional rules of preclusion are not applicable to § 1983 suits." *Id.* at 99. Although the Court's reasoning appears to have equal force if applied to claim preclusion, the Court restricted its decision to the collateral estoppel effects of prior state court decisions. *Id.* at 94 n. 5.

In the Title VII setting, the Court recently extended the *Allen* reasoning to encompass claim preclusion. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461 (1982). Kremer had filed discrimination charges with the E.E.O.C. which referred him to the New York State Division of Human Rights. Upon an adverse determination by the state agency, Kremer petitioned for review in the Appellate Division, First Department, of the New York Supreme Court. That court affirmed the agency's determination under an "arbitrary or capricious" standard. The United States Supreme Court ultimately sustained the dismissal of Kremer's subsequent Title VII action on res judicata grounds. While the Court recognized that the state court did not give de novo review

tice of the availability of any administrative procedures or the proper procedures to exercise his rights thereto after he was given notice of his termination of employment with the Defendant Parma City School District.

19. The Plaintiff was denied equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution by the Defendant Parma City School District when he was terminated from his employment because he could not pass an eye examination while another mechanic who also could not pass an eye examination was not terminated from his employment.

20. The Plaintiff was denied due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution when he was not given an opportunity by the Defendants prior to his termination of employment to state his objections thereto before said termination of employment became effective.

21. The Plaintiff was denied due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution by the Defendants when he was not afforded a full evidentiary hearing prior to his termination of employment with the Defendant Parma City School District."

to Kremer's discrimination claim, it held that limited review of the agency's determination sufficed for purposes of claim preclusion.

Upon holding that Title VII did not repeal or modify § 1738, the Court in *Kremer* applied state law to determine the preclusive effect of the state court judgment. Under state law, affirmance of a state administrative decision precluded further state litigation involving the claims that were the subject of the administrative decision. The federal court, therefore, was bound by § 1738 to respect the prior state court judgment. According to the Court in *Kremer,* reliance on § 1738 was "strongly suggested if not compelled by [its] recent decision in *Allen v. McCurry* that preclusion rules apply in 42 U.S.C. § 1983 actions and may bar federal courts from freshly deciding constitutional claims previously litigated in state court." *Id.* at 476.

We construe *Allen* and *Kremer* to compel application of traditional principles of claim preclusion in the § 1983 context, as indeed our Court's precedents suggest. *Castorr v. Brundage,* 674 F.2d 531, 536–37 (6th Cir.), *cert. denied,* 459 U.S. 928 (1982); *Coogan v. Cincinnati Bar Association,* 431 F.2d 1209, 1211 (6th Cir.1970). Applied to the instant case, *Allen* and *Kremer* suggest that we scrutinize Ohio law to assess the preclusive effect it would attach to the state law dismissal of Donnelly's claims. If Ohio courts would hold that the prior determinations preclude any further litigation under principles of res judicata, then we are bound to affirm the dismissal of Donnelly's claims.

As in most jurisdictions, the doctrine of res judicata in Ohio bars the relitigation of those claims on which there has been a final judgment on the merits. *Norwood v. McDonald,* 142 Ohio St. 299, 305, 52 N.E.2d 67, 71 (1943); *see Federal Deposit Insurance Corp. v. Eckhardt,* 691 F.2d 245, 247 (6th Cir.1982). Ohio rules which determine whether a dismissal should be treated as "on the merits" track the codified Federal Rule.[8] Ohio R.Civ.P. 41(b)(4) provides in relevant part that "A dismissal for lack of jurisdiction over the person or subject matter ... shall operate as a failure otherwise than on the merits." All other dismissals are to be considered with prejudice, even if the trial court does not so specify. In the instant case, although the state trial court which originally dismissed the action did not articulate the grounds for its decision, the state appellate court based its decision on Donnelly's failure to meet the requirements of Ohio Rev.Code Ann. § 119.12 to perfect his appeal from the administrative adjudication.[9] The Cuyahoga County Court of Appeals held that:

> "Donnelly failed to seek judicial review of the Commission's July 25, 1978 decision. Instead, he instituted an independent proceeding in the Common Pleas Court of Cuyahoga County on October 5, 1978. This action was not permissible.
>
> The first assignment of error is not well taken.
>
> In view of the disposition of the first assignment of error, it is unnecessary to address the remaining assignments of error."

We now must decide whether Ohio considers dismissal for failure to comply with § 119.12 to be a dismissal on the merits.

8. Fed.R.Civ.P. 41(b) in relevant part provides: "INVOLUNTARY DISMISSAL: EFFECT THEREOF. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him....
If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal other than for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

9. Donnelly also claims that the court's failure to entertain an independent action for damages was plain error. It is well settled, however, that an erroneous decision, as long as it is on the merits, still bars subsequent actions. Restatement (Second) of Judgments § 19 comment a (1982).

Appellee Parma Board of Education presumably would characterize the fifteen day statutory limit for appealing from the Commission's decision as a statute of limitations.[10] While dismissal on statute of limitations grounds does not necessarily carry preclusive effect under Fed.R.Civ.P. 41(b), *compare Henson v. Columbus Bank & Trust Co.,* 651 F.2d 320, 324–25 (5th Cir.1981), *with Sack v. Low,* 478 F.2d 360 (2d Cir. 1973), it is clear that Ohio treats such dismissals as "on the merits". In *LaBarbera v. Batsch,* 10 Ohio St.2d 106, 227 N.E.2d 55 (1967), the Ohio Supreme Court held that a judgment based upon a statute of limitations bars further actions arising from the same claims. The court reasoned that "[s]tatutes of limitation are . . . designed to assure an end to litigation and to establish a state of stability and repose." *Id.* at 114, 227 N.E.2d at 62. Thus, considering dismissal on statute of limitations grounds as being "on the merits" furthers the res judicata aims of repose and finality.

To be sure, the Cuyahoga County Court of Appeals dismissed Donnelly's action because it was time barred. Yet Ohio, like other jurisdictions, distinguishes between statutes of limitations and provisions for perfecting appeals. While a statute of limitations protects litigants from the possibility of vexatious repetition of suits and hence may be viewed as a defense on the merits, requirements to perfect an appeal reflect institutional limitations on the power of a court. The Court of Common Pleas in Ohio, although a trial court, is a court of limited jurisdiction. Ohio Const. art. IV, § 1. To obtain review of an administrative decision, the aggrieved litigant must rely on specific statutory mandates such as those provided by §§ 124.34 and 119.12. Those sections detail the steps which litigants must follow to perfect an appeal from a state administrative tribunal and thereby invoke the jurisdiction of the court. *Kearns v. Sherrill,* 63 Ohio App. 533, 537–39, 27 N.E.2d 407, 410–11 (analyzing precursors to §§ 124.34 and 119.12), *aff'd,* 137 Ohio St. 468, 30 N.E.2d 805 (1940).

In construing the legislative requirements of § 119.12, an Ohio Court of Common Pleas in *Bolt v. Bureau of Motor Vehicles,* 41 Ohio Misc. 139, 324 N.E.2d 802 (1974), held that failure to file a timely notice of appeal pursuant to § 119.12 robs the Court of Common Pleas of the power to entertain jurisdiction: "The filing of the notice of appeal with the court does not comply with the provisions of R.C. 119.12 for the purpose of establishing jurisdiction to hear this appeal on the merits in this Court." *Id.* at 142, 324 N.E.2d at 804. Similarly in *Harris v. Lewis,* 69 Ohio St.2d 577, 433 N.E.2d 223 (1982), the litigant failed to file a notice of appeal from an agency's decision in the correct court of common pleas as specified by § 124.34. Since the litigant had not complied with the statute, the Ohio Supreme Court held that the Court of Common Pleas which actually heard the case lacked "subject matter jurisdiction" to entertain the appeal. *Id.* at 581, 433 N.E.2d at 226.

The fact that Ohio considers failure to file a timely notice of appeal to be jurisdictional may also be seen in its Rules of Appellate Procedure. The Court of Common Pleas in this instance is acting as an appellate tribunal, Ohio Rev.Code Ann. § 2505.01 (Page 1982), and has no power to resolve a claimant's dispute with the administrative agency except on review. Rule 3A of the Ohio Rules of Appellate Procedure, which is identical in this respect to the corresponding federal rule (F.R.A.P. 3(a)), specifies that:

> "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal."

Failure to file a timely notice of appeal may affect the jurisdiction of a reviewing court,

10. Appellee without analysis assumed that the state adjudication was "on the merits". It did analogize, however, to our decision in *Cemer v. Marathon Oil Co.,* 583 F.2d 830, 832 (6th Cir. 1978), which involved the res judicata effect of a dismissal on statute of limitations grounds.

but it does not trench upon the "validity of an appeal". *Zier v. Bureau of Unemployment Compensation,* 151 Ohio St. 123, 125, 84 N.E.2d 746, 748 (1949) (requirement to file timely notice of appeal is a "condition precedent" to jurisdiction).[11] Although the Ohio trial and appellate courts in the instant case did not use "without prejudice" terminology, the appellate court clearly indicated that the action was barred on the jurisdictional ground specified above. *Gibson v. Summers Construction Corp.,* 163 Ohio St. 220, 229, 126 N.E.2d 326, 331 (1955) (if ground of dismissal clearly was jurisdictional, it is irrelevant that the state court did not employ the dismissal without prejudice language); *cf. Costello v. United States,* 365 U.S. 265, 284–88 (1961) (trial court's failure to specify that action was dismissed without prejudice is not dispositive). We conclude that under Ohio law, Donnelly's failure to perfect his appeal as prescribed by Ohio Rev.Code Ann. §§ 124.-34 and 119.12 was "otherwise than on the merits", leaving him free to pursue his § 1983 claim in the federal court.

In essence, therefore, the Cuyahoga County Court of Appeals held that it did not have jurisdiction to review the Civil Service Commission's adjudication. Unlike in *Kremer, supra,* the reviewing state court here cannot be understood to have approved or affirmed the administrative adjudication. Rather, that adjudication stands unappealed and carries no claim preclusion effect.[12] *Kremer, supra,* 456 U.S. at 477. As the Fourth Circuit recently stated, "The choice of whether to proceed in a state or federal forum, however, necessarily belongs to the plaintiffs and they cannot be deprived of it by a state rule which gives preclusive effect to unappealed state administrative decisions. A contrary rule would frequently force plaintiffs to choose between foregoing the opportunity to resolve their problems before state administrative bodies and relinquishing their congressionally mandated access to federal courts." *Moore v. Bonner,* 695 F.2d 799, 801 (4th Cir.1982) (unappealed decision of state administrative agency not entitled to "full-faith-and-credit dignity accorded state court decisions").

The full faith and credit statute requires us to place ourselves in the state court's position only to the extent that the prior adjudication was "on the merits". To bar this action would preclude Donnelly from airing his constitutional claim in any judicial forum.[13] We believe that it is this controlling principle that has prompted other federal courts to reach the same result as we do today. *Gargiul v. Tompkins,* 704 F.2d 661, 667 (2d Cir.1983); *Hernandez Jimenez v. Calero Toledo,* 576 F.2d 402, 404 (1st Cir.1978); *Griffin v. George R. Buck Consulting Actuaries,* 551 F.Supp. 1385, 1386 n. 2 (S.D.N.Y.1982).

IV.

We therefore proceed to the merits of the due process claims of both Loudermill and Donnelly. As civil service employees, both enjoyed a cognizable interest in continuing employment absent cause for discharge. The state could abrogate their entitlement only by observing the strictures of due process. *Jackson v. Kurtz,* 65 Ohio App.2d 152, 157–58, 416 N.E.2d 1064, 1068 (1979). The two employees claim that the process they received was constitutionally infirm.

Loudermill and Donnelly first allege that, without an opportunity to respond to the

11. Under the federal rules, timely filing of an appeal has long been held "mandatory and jurisdictional". *United States v. Robinson,* 361 U.S. 220, 229 (1960).

12. The facts adjudicated at the administrative hearing do have collateral estoppel effect. *See generally United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22 (1966); *see also* Restatement (Second) of Judgments § 83(2) comment b (1982).

13. Given the constraints of Ohio law, the administrative agency clearly lacked the power to grant the procedural due process claim. *Parfitt v. Columbus Correctional Facility,* 62 Ohio St.2d 434, 406 N.E.2d 528, *cert. denied,* 449 U.S. 1061 (1980); *see generally* Restatement (Second) of Judgments § 83(3) comment g (1982).

charges against them prior to termination, they were denied due process. While the state responds that the post-discharge hearing provided in § 124.34 is sufficient,[14] appellants urge that, if they had been afforded some limited right to challenge the impending discharges, the discharge orders might well have been rescinded. They argue not for a full fledged evidentiary hearing, but rather for an opportunity to present their side of the case, whether in person or by letter. They root their due process claim in the oft-quoted adage that due process requires that the state afford a hearing "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965).

Although the Supreme Court has never delineated the situations in which pre-termination hearings are constitutionally required, it has been confronted with such claims on several occasions. We start with the Court's seminal opinion in *Arnett v. Kennedy,* 416 U.S. 134 (1974), which dealt with the extent to which the federal government must provide protection to its civil service employees before discharge. Although no consensus in reasoning emerged, a majority agreed that a public employee was not entitled to a full evidentiary hearing prior to discharge. Appellees in the instant case urge that the analysis in Justice Rehnquist's plurality opinion disposes of appellants' claims here: "where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet." *Id.* at 153. Since § 124.34 limits an employee's right to a full evidentiary hearing after discharge at the same time that it first vests the property right to continuing employment, appellees argue that no pre-termination notice or hearing is required. The district court in its *Loudermill* opinion agreed with appellees that *Arnett* "mandates that the issue be resolved in favor of the post-dismissal hearing that Loudermill actually received."

The plurality view in *Arnett,* however, has yet to be enshrined in our law. Rather, federal due process rights, which may not be the same as state procedural guarantees, must be accorded before a state deprives one of a property interest. Indeed, Justice Powell's forceful concurrence, which was necessary to reach a majority in *Arnett,* repudiated the plurality's reasoning: "This view misconceives the origin of the right to procedural due process. That right is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in federal employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Id.* at 167 (Powell, J., concurring).

Subsequent Supreme Court cases have followed Justice Powell's view. For example, in *Vitek v. Jones,* 445 U.S. 480 (1980), the Court held that a prison inmate must be afforded notice and an opportunity to be heard before being transferred to a mental hospital. The majority reaffirmed that, once an entitlement has been found, an independent determination of whether federal due process requirements were observed must still be made: "These minimum requirements being a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Id.* at 491; *see also Santosky v. Kramer,* 455 U.S. 745, 755 (1982). In other words, the fact that Ohio provided appellants in this case with full evidentiary hearings after termination does not suggest that no other process was due. We must determine independently whether the post-termination hearings provided under Ohio's statutory scheme satisfied federal due process requirements.

14. We recognize that the Ohio Supreme Court has held that no pre-termination process is constitutionally required. *Parfitt v. Columbus Correctional Facility, supra* note 13, 62 Ohio St.2d at 438, 406 N.E.2d at 531. We of course are not bound by that court's constitutional adjudication.

The Supreme Court's decision in *Mathews v. Eldridge,* 424 U.S. 319, 333–35 (1976), sets forth the competing interests of the government and the individual that must be accommodated to assess what process is due: the importance of the private interest affected by the governmental action; the risk of governmental error through the procedures used; and the magnitude of the governmental interest involved. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434 (1982). While we do not suggest that a general rule has yet emerged, the Ninth Circuit has distilled the long line of Supreme Court cases and has concluded that "[t]here is a strong presumption that a public employee is entitled to some form of notice and opportunity to be heard before being deprived of a property or a liberty interest." *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 778 (9th Cir.1982).

Appellees in the instant case argue that even a cursory comparison with *Mathews* obviates the need for further analysis. They point out that the Supreme Court in *Mathews,* after balancing the pertinent factors, held that the government could terminate social security disability payments without first conducting an evidentiary hearing. Appellees urge that termination of disability benefits could cause greater financial harm to the individual than loss of employment, since other avenues of income in the latter situation might exist. We think that appellee's massive reliance on *Mathews* is misplaced. The government in *Mathews* did afford the individual substantial protections before deciding to terminate disability benefits. It advised the recipient that the benefits might be terminated, summarized the evidence as to why the termination might be effected, and informed the recipient that he or she had a right to respond in writing and submit additional evidence. *Id.* at 337–38. In upholding the constitutionality of the government's procedures, the Court explained that "the ordinary principle, established by our decisions, [is] that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Id.* at 343. Depending upon the situation, the "something less than an evidentiary hearing" may be constitutionally required.[15]

We start by recognizing that the private interest at stake, public employment, unquestionably is of vital importance to both Loudermill and Donnelly. Employment provides not only financial livelihood, but frequently self-esteem and social status. Dismissal therefore may deprive the employee of needed income, and, in some circumstances, it may rob the employee of a protected liberty interest as well. In the instant cases, both employees allegedly suffered greatly from their terminations. The notice of discharge stigmatized Loudermill as dishonest, and he suffered financially from the dismissal. Even though Donnelly eventually was reinstated, he too, allegedly suffered economic loss, at least in the interim.

15. In denying appellants' joint motion to amend the judgment, the district court in the instant case switched its original reliance on the plurality opinion in *Arnett* to the concurrence by Justice Powell. The court construed the concurrence as precluding an examination of whether pre-termination procedures were constitutionally required. On the contrary, Justice Powell emphasized:

> "Appellee also argues that the absence of a prior evidentiary hearing increases the possibility of wrongful removal and that delay in conducting a post-termination evidentiary hearing further aggravates his loss. The present statute and regulations, however, already respond to these concerns. The affected employee is provided with 30 days' advance written notice of the reasons for his proposed discharge and the materials on which the notice is based. He is accorded the right to respond to the charges both orally and in writing, including the submission of affidavits. Upon request, he is entitled to an opportunity to appear personally before the official having the authority to make or recommend the final decision.... These procedures minimize the risk of error in the initial removal decision and provide for compensation for the affected employee should that decision eventually prove wrongful."

416 U.S. at 170 (Powell, J., concurring). Justice Powell recognized that pre-termination procedures could play a critical role in affording litigants due process. He relied in part on his concurrence in *Arnett* in authoring *Mathews.* 424 U.S. at 334. Thus, neither *Arnett* nor *Mathews* lends support to the district court's position in the instant case.

Under the second *Mathews* factor, we must gauge the proposed procedure to determine whether its use would have minimized error. Providing a limited opportunity to present evidence before dismissal is critical to ensure that the proper governmental response ensues. With more information, in particular that provided by the employee whose record is in dispute, the government presumably would be better equipped to make employment decisions. For example, in the instant case Loudermill could have presented his defense of good faith mistake—that he did not know that he had been convicted of a felony. The conviction occurred twelve years earlier. Perhaps through negotiations he thought a misdemeanor charge had resulted. Even if Loudermill were clearly wrong, he should have been afforded the chance to respond; for he was dismissed not because of the prior conviction per se, but because of alleged dishonesty. Donnelly's case for a pretermination opportunity to present evidence is even more compelling since he eventually was reinstated. If Donnelly had been able to inform his employer that at least one other employee had been retained despite failing the eye examination, Donnelly might never have been discharged at all. Thus, even a limited opportunity to respond before termination can minimize the risk of error.

Application of the third *Mathews* factor requires us to inquire into the magnitude of the governmental interest involved. The government has interests in minimizing its administrative burdens and in ensuring effective employee discipline. While a full hearing before termination as sought in *Mathews* and *Arnett* might be too time consuming and expensive, an abbreviated opportunity to respond should not lead to excessive delay and its cost should be minimal. Affording that opportunity in the instant cases, therefore, would not have sorely depleted the municipalities' financial resources, nor have impeded their ability to maintain discipline. In an emergency, of course, a municipality might choose to suspend an employee pending investigation. Even in Loudermill's case, however, it never demonstrated that an emergency existed. No emergency was even conceivable with respect to Donnelly.

On balance, therefore, we conclude that the compelling private interest in retained government employment, combined with the substantial safeguard of presenting evidence before dismissal, outweighs the added administrative burdens of the pre-termination process that would have been imposed upon the municipalities.

Our conclusion is bolstered by analogy to Supreme Court decisions that have required pre-termination hearings both before and after *Mathews.* In *Bell v. Burson,* 402 U.S. 535, 539–41 (1971), the Court ruled that a state may not suspend a driver's license, if protected by entitlement, until some form of hearing is conducted. Similarly, before a school may suspend a student who enjoys an entitlement to continuing schooling, it must provide some form of pre-suspension hearing. *Goss v. Lopez,* 419 U.S. 565, 574–75 (1975). *See also Vitek v. Jones, supra,* 445 U.S. at 492–94 (a prisoner must be afforded a hearing before transfer to a mental hospital). We believe that the opportunity to challenge a discharge is at least as critical as the opportunity to challenge the suspension of a driver's license or a several day suspension from school. We also find it persuasive in the instant case, as in those referred to above, that the governmental body realistically could have provided some protection for the litigant without unduly adding to its own administrative burdens. In contrast, in those cases in which pre-deprivation hearings were not required, affording process before the deprivation was just not feasible or practical. *E.g., Parratt v. Taylor,* 451 U.S. 527, 540–42 (1981) (pre-deprivation hearing not realistic when prison guard negligently lost prisoner's hobby kit); *Ingraham v. Wright,* 430 U.S. 651, 678–82 (1977) (same in context of corporal punishment in a school; possibility of subsequent tort suit sufficient).[16]

16. We note that other courts of appeal have held that due process requires some form of pre-termination hearing in related contexts. *Vanelli v. Reynolds School District No. 7,* 667

We therefore hold that appellees' failure to afford Loudermill and Donnelly an opportunity to present evidence challenging the proposed discharges violated the Fourteenth Amendment.[17] Section 124.34 cannot be applied constitutionally in such a way as to deny the rudiments of due process. Although damages for the due process violations may be difficult to prove, *Carey v. Piphus,* 435 U.S. 247, 262–63 (1978), the district court's dismissal of the two complaints must be reversed and the cases remanded for further proceedings.[18]

V.

We turn finally to appellants' claims that the delays in post-termination hearings deprived them of due process. Neither employee received a hearing within the thirty day statutory period provided by § 124.34. Note 2 *supra.* In Loudermill's case, a referee of the Cleveland Civil Service Commission did not conduct a hearing until three months after Loudermill received his notice of dismissal, and the full Commission did not hold a hearing until eight months had elapsed. In Donnelly's case, the Parma Civil Service Commission did not hold a hearing until nine and one-half months after his dismissal. The two appellants argue, first, that the state's failure to meet its own statutory deadline is constitutionally impermissible, and, second, that the delays themselves were so excessive as to violate due process.

The thirty day statutory period here involved does not give rise to a procedural entitlement. In *Olim v. Wakinekona,* 51 U.S.L.W. 4491 (U.S. April 26, 1983) (No. 81–1581), the Supreme Court rejected a due process claim based in part on the state's failure to afford a claimant the procedural protections prescribed by statute: "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Id.* at 4494. *See Bills v. Henderson,* 631 F.2d 1287, 1298–99 (6th Cir.1980) ("every deviation from state procedures cannot be viewed as a federal constitutional violation"). Moreover, Ohio courts have ruled that the thirty day period is more of a guide than a strict requirement. *E.g., In re Bronkar,* 53 Ohio Misc. 13, 17, 372 N.E.2d 1345, 1347 (1977). The statutory period attempts to ensure expedited review, but the state's failure to hold hearings within that period in and of itself did not violate appellants' constitutional rights.

Although violation of the literal terms of the statute does not run afoul of due process, at some point delay in post-termination hearings may constitute a constitutional violation. Due process requires that a hearing be held, not just "in a meaningful manner", but also at a "meaningful time". With each passing month, employees may suffer increased financial privation

F.2d 773, 778–79 (9th Cir.1982); *Gosney v. Sonora Independent School District,* 603 F.2d 522, 525 (5th Cir.1979). *But cf. Ciechon v. City of Chicago,* 634 F.2d 1055 (7th Cir.1980) (no hearing required before firemen suspended).

17. Donnelly's equal protection claim was dismissed without prejudice by the district court. The court, in denying the motion to amend the judgment, held that "[a]lthough Donnelly alleged no facts, in support of his equal protection claim, it was dismissed without prejudice on the ground that he might have possessed a state cause of action for backpay." We agree that Donnelly's equal protection claim does not survive serious scrutiny. Donnelly makes no allegation that he was the victim of any particular animus, nor does he claim that he is a member of a protected class. *See Cook v. City of Price,* 566 F.2d 699, 701 (10th Cir.1977).

18. Loudermill and Donnelly also alleged that the failure to hold pre-termination hearings violated their protected "liberty" interests. We find no liberty interest whatsoever in Donnelly's discharge—dismissal for failure to pass an eye examination cannot be characterized as stigmatizing. Furthermore, while the discharge of Loudermill might be considered stigmatizing, he failed to allege that the reasons for his dismissal were "published", a prerequisite to any liberty interest claim. *Huffstutler v. Bergland,* 607 F.2d 1090, 1092 (5th Cir.1979). Accordingly, we affirm the district court's dismissal of those parts of the complaints which it construed as raising a Fourteenth Amendment liberty interest.

and social stigma. The Supreme Court in *Barry v. Barchi,* 443 U.S. 55 (1979), reaffirmed the need to hold prompt post-termination hearings. The New York State Racing & Wagering Board had suspended a horse trainer because of evidence disclosed after a race that his entry in the race had been drugged. By statute, the trainer had no means of challenging his suspension until the disciplinary action became final. The Court held that "[o]nce suspension has been imposed, the trainer's interest in a speedy resolution of the controversy became paramount.... We also discern little or no state interest, and the State has suggested none, in an appreciable delay in going forward with a full hearing." *Id.* at 66; *see also Blackenship v. Secretary of H.E.W.,* 587 F.2d 329, 334 (6th Cir.1978) (holding on statutory grounds that an average delay of 220 days in social security hearings was unreasonable).

Unlike in *Barry,* however, Ohio does provide in § 124.34 a mechanism for prompt review. Even if Ohio fails to meet its thirty day goal due to any number of possible reasons,[19] claimants can file a petition for mandamus to expedite the review process, such as the one successfully filed by Donnelly. Thus, in contrast to the situation in *Barry,* almost all post-termination hearings under § 124.34 should be held within a "reasonable" period after the termination.

This is not to suggest that abuses in individual cases under § 124.34 may not occur. We hold only that the delay must be "excessive" or "unreasonable" before federal due process is denied. Although determining a reasonable time period defies easy exegesis, we note that the Supreme Court has permitted delays comparable to the ones in the instant cases. In *Arnett, supra,* the employee claimed that he could not have obtained review for at least three months after the adverse administrative determination. Justice Rehnquist responded, "We assume that some delay attends vindication of an employee's reputation through the hearing procedures provided on appeal, and conclude that at least the delays cited here do not entail [a deprivation of due process]." 416 U.S. at 158. Similarly, in *Mathews, supra,* the social security claimant argued that the ten or eleven month average delay in post-termination hearings deprived him of due process. The Court rejected that argument, assuming apparently that such a delay, while possibly creating hardships, simply did not rise to a constitutional violation. 424 U.S. at 341–42. While we do not condone the delays in the two cases before us, we hold that neither delay violated due process.

To summarize: we affirm the district court's dismissal of that part of appellants' complaints which alleged that the delays in post-termination hearings violated their due process rights; and we affirm the district court's dismissal of Donnelly's equal protection claim and its dismissal of both appellants' claims of violation of their liberty interests. We vacate, however, that part of the district court's judgment that dismissed the pre-termination procedural due process claims. Upon remand, appellants may seek to prove that they sustained damages stemming from the state's failure to provide any pre-termination due process.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

WELLFORD, Circuit Judge, concurring and dissenting.

I agree with that portion of the opinion holding that appellants' failure to exhaust state judicial remedies does not require dismissal under the circumstances presented. I also concur in the statement in footnote 5 that *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) "has not precluded the possibility of fashioning future exceptions to the no-exhaustion rule...." *See Fair Assessment in Real Estate Association v. McNary,* 454

19. The delays in the instant cases in all likelihood were inadvertent—the Commission's delay in Loudermill's situation probably stemmed from administrative backlog and the delay in Donnelly's more unique case arose from the litigation in the state courts over whether Donnelly had properly appealed from the Board of Education's decision.

U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

I would hold, however, that Donnelly is precluded from proceeding in this court after his identical claims in the Ohio State Courts were dismissed *with prejudice* by the Court of Common Pleas, this judgment was affirmed after a timely notice of appeal by the Ohio Court of Appeals, Eighth District, and appellant Donnelly's motion for an order directing the court of appeals to certify its record was overruled by the Ohio Supreme Court. Donnelly was afforded an opportunity for further eye testing before his termination, received a full post-termination hearing before the Parma Civil Service Commission, and, as conceded, has been reinstated to his former job. *See Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *Castorr v. Brundage,* 674 F.2d 531, 536 (6th Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 240, 74 L.Ed.2d 189 (1982); *Ciechon v. City of Chicago,* 634 F.2d 1055 (7th Cir.1980).

Furthermore, I would hold that appellants have been afforded minimal due process requisites under the totality of circumstances in these cases. The property interest which appellants had in their continued state or public employment "was itself conditioned by the procedural limitations which had accompanied the grant of that interest."[1] *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974). The procedures afforded Loudermill and Donnelly under the Ohio Civil Service laws, in my view, were substantially equivalent to those afforded the federal employee, Arnett,[2] and they afforded reasonable redress if the basis for the purported termination were found to be erroneous. The Ohio Supreme Court's determination that the Ohio procedures comport with due process requirements, while not controlling, is significant. *See Parfitt v. Columbus Correctional Facility,* 62 Ohio St.2d 434, 406 N.E.2d 528 (1980). Other similar state law procedures for termination of public employees have been held to comply with due process requirements. *Webb v. Dillon,* 593 F.2d 656 (5th Cir.1979), *Ciechon v. City of Chicago, supra.*

*Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), relied upon in the majority opinion, applies to a liberty interest, rather than a property interest. The transfer to a state mental hospital in *Vitek* took place without any hearing requirement at any time for the prisoner. That such a procedure was held to deprive the prisoner of his liberty interest without due process is not persuasive in the instant situation. Deprivation of a liberty interest and deprivation of a property interest, even of the same person occasioned by the same act, are not the same. *See Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 781 (9th Cir.1982).[3] *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), involved standard-of-proof procedural requirements to be afforded natural parents of a child before the termination of their parental rights by the state. Something more than a "fair preponderance of the evidence" was required before a parent's vital interest in his (or her) child could be cut off. That decision is not, in my view, particularly pertinent to the issues involved *sub judice* except the holding that minimum requirements of due process are a matter of federal law, a question about which there is no dispute in this case.

Neither does *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), also cited by the majority opinion, mandate a pre-termination hearing. The Court there held:

> What the Fourteenth Amendment does require, however, "is 'an *opportunity* . . .

1. It is acknowledged that this "conditional property interest" rationale did not have the support of a majority of the Court in *Arnett.*

2. Five members of the Court (Justices Rehnquist, Burger, Stewart, Powell and Blackmun) found the post-termination hearing procedure in *Arnett* to be constitutionally adequate.

3. In Loudermill's case, after a full hearing his termination was found to be justified. Under the rationale of *Vanelli,* his damages, if any, should be limited to those which occurred between the time of his termination and the time of the hearing afforded him before the referee of the Civil Service Commission.

> granted at a meaningful time and in a meaningful manner,' *Armstrong v. Manzo,* 380 U.S. 545, 552 [85 S.Ct. 1187, 1191, 14 L.Ed.2d 62] (1965) (emphasis added), 'for [a] hearing appropriate to the nature of the case,' *Mullane v. Central Hanover Tr. Co., supra,* [339 U.S. 306] at 313 [70 S.Ct. 652 at 656, 94 L.Ed. 865]." *Boddie v. Connecticut,* 401 U.S. [371] at 378 [91 S.Ct. 780 at 786, 28 L.Ed.2d 113].

*Id.* at 437, 102 S.Ct. at 1159.

In *Logan, Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), are cited for the proposition that,

> [a] post-termination hearing [is] permitted where the decision to terminate was based on a reliable *pretermination finding* (emphasis added).

*Logan,* 455 U.S. at 436, 102 S.Ct. at 1158.

Under the facts of these cases, I would conclude that as to both appellants there was a "reliable pretermination finding" that cause existed for the termination of Donnelly and Loudermill, and that each was afforded a due process hearing at a "meaningful time and in a meaningful manner." *See Armstrong v. Manzo, supra,* and *Mathews v. Eldridge, supra.*

Accordingly, I would affirm the decision of the district court in both cases.