181 F.3d 997 (9th Cir. 1999)
 MIGUEL CHAVEZ-MURILLO, PETITIONER,
V.
IMMIGRATION AND NATURALIZATION SERVICE, RESPONDENT.
 No. 98-70948
 U.S. Court of Appeals, Ninth Circuit
 Submitted May 7, 1999*
Order and Opinion Filed June 22, 1999
 
 [Copyrighted Material Omitted]
 Gina Darvas, Darvas, Chawla & Aguirre, San Diego, California, for the petitioner.
 H. Bradford Glassman, Office of Immigration Litigation, United States Department of Justice, Washington D.C., for the respondent.
 Petition for Review of an Order of the Board of Immigration Appeals. INS No. Agk-ene-cuh
 Before: Melvin Brunetti, Kim McLane Wardlaw and William A. Fletcher, Circuit Judges.
 
 ORDER
 
 1
 Respondent's Request for Publication is GRANTED. The Memorandum Disposition filed May 12, 1999, is redesignated as a published Opinion authored by Judge Wardlaw. The Opinion amends the Memorandum by changing "footnote one" to "footnote two" and inserting the following as amended,"footnote one":
 
 
 2
 In evaluating whether any of Chavez-Murillo's constitutional claims is colorable, we do not invoke the now defunct "hypothetical jurisdiction" doctrine. See Legal Aid Soc'y of Haw. v. Legal Servs. Corp., 145 F.3d 1017, 1029 (9th Cir. 1998). Rather, we do so to determine whether we have jurisdiction to consider the claims on the merits.
 
 OPINION
 WARDLAW, Circuit Judge
 
 3
 Miguel Chavez-Murillo seeks review of a decision of the Board of Immigration Appeals (BIA) dismissing his administrative appeal and ordering him removed from the United States. Chavez-Murillo contends that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) works to deny the constitutional guarantees of due process and equal protection, and to violate the constitutional prohibitions against double jeopardy and ex post facto laws. We conclude that 8 U.S.C. S 1252(a)(2)(C) bars our jurisdiction over the instant petition, and we, therefore, dismiss.
 
 BACKGROUND
 
 4
 Chavez-Murillo is a national of Mexico, who became a lawful permanent resident (LPR) of the United States in 1986. On December 4, 1997, officials arrested him at the Tijuana border crossing for attempting to smuggle 53.9 pounds of marijuana from Mexico into the United States. On December 16, 1997, he pleaded guilty in California Municipal Court to possession of marijuana for sale, a felony. And on January 16, 1998, following a hearing, an immigration Judge ordered him "removed," citing 8 U.S.C. S 1182(a)(2)(A)(i)(II), which declares that "any alien convicted of... a violation of... any law... of... the United States... relating to a controlled substance" is "inadmissible." 8 U.S.C.S 1182(a)(2)(A)(i)(II). On appeal, the BIA concluded that Chavez-Murillo's removability had been established by "clear, unequivocal and convincing evidence," and dismissed. Chavez-Murillo filed a timely petition for review.
 
 ANALYSIS
 
 5
 The IIRIRA expressly precludes judicial review of removal orders entered against aliens found inadmissible for having been convicted of controlled substance offenses. See 8 U.S.C. S 1252(a)(2)(C). In another context, however, citing "the `serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim," the Supreme Court has said that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear. " Webster v. Doe, 486 U.S. 592, 603 (1988) (interpreting the National Security Act of 1947, and citing Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 681, n. 12 (1986)). This holding in Webster has not been expressly imported into immigration law, though the INS presumes its possible relevance here. We assume, without deciding, that Webster mandates our consideration of any "colorable constitutional claim" arising under the IIRIRA. We thus examine Chavez Murillo's claims to determine whether any is substantial enough to overcome the statutory bar to our jurisdiction.[1] Each presents a constitutional question which we review de novo. See Martinez v. City of Los Angeles, 141 F.3d 1373, 1382 (9th Cir. 1998).
 
 1. The Due Process Clause
 
 6
 Chavez-Murillo complains that, with the IIRIRA, Congress took from the Attorney General the discretion she had previously enjoyed to "cancel" the "removal" of a permanent resident alien who had been convicted of an aggravated felony, see 8 U.S.C. S 1229b(a)(3), and thereby took from him the opportunity he might once have enjoyed to petition the Attorney General for lenity. This, he asserts, amounts to a deprivation of due process. We disagree.
 
 
 7
 First, as a matter of common sense, we do not see how Chavez-Murillo can maintain that the right to petition the Attorney General is his due when the Attorney General was stripped of her discretion to grant the relief he would seek a full year before he landed himself in a position to "qualify" for such relief if it were still available. Second, the law does not recognize the vested right Chavez-Murillo claims. "So long... as aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders." Carlson v. Landon, 342 U.S. 524, 534 (1952). In the exercise of its power, Congress may provide for the deportation of permanent resident aliens, even on new grounds not in existence at the time of their admission. See Harisiades v. Shaughnessy, 342 U.S. 580, 587-88 (1952). From this, we must conclude that Congress has the power to expand or contract the availability of discretionary relief from removal.
 
 2. The Equal Protection Clause
 
 8
 Chavez-Murillo next contends that his removal violates the Equal Protection Clause because other provisions of federal law afford greater protections to criminal defendants, illegal aliens, and other LPR's than the IIRIRA affords him.
 
 
 9
 We analyze this claim in light of the Supreme Court's admonition that " `the power to expel or exclude aliens [i]s a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' " Fiallo v. Bell, 430 U.S. 787, 792 (1977) (quoting Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953)). In deference to Congress' plenary power in this area, we evaluate "[c]lassifications among aliens... under the rational basis test," Berroteran-Melendez v. INS, 955 F.2d 1251, 1258 (9th Cir. 1992) (citing Paointhara v. INS, 708 F.2d 472, 473 (9th Cir.), modified and reh'g denied, 721 F.2d 561 (9th Cir. 1983)), upholding regulations that are "rationally related to... legitimate [government] interests," City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976).
 
 
 10
 We have already recognized a rational basis for holding LPR's to higher standards of conduct than non-immigrants must meet. Because the LPR "enjoys greater rights than a nonimmigrant alien," he "assumes commensurate responsibilities and duties." Castillo-Felix v. INS, 601 F.2d 459, 470 (9th Cir. 1979). Moreover, we have never questioned the legitimacy of Congress' "express[ing] our national policy against persons who possess controlled substances by enacting laws... to exclude them from the United States if they are aliens." Mason v. Brooks, 862 F.2d 190, 194 (9th Cir. 1988). Finally, we have already answered Chavez-Murillo's implicit charge that the challenged provision is underinclusive:"equal protec tion does not require Congress to eliminate all evils in order to legislate against some." United States v. McDougherty, 920 F.2d 569, 572 (9th Cir. 1990); cf. City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) ("Legislatures may... adopt[ ] regulations that only partially ameliorate a perceived evil,... deferring complete elimination of the evil to future regulations."). In light of these past pronouncements, we discern no equal protection violation.
 
 3. The Double Jeopardy Clause
 
 11
 Chavez-Murillo argues that the Constitution's prohibition of double jeopardy prevents the State from "removing" him for committing a criminal offense after punishing him for the same offense. Notwithstanding Chavez-Murillo's thorough analysis and contrary Conclusion, the Supreme Court has consistently maintained that "[w]hile the consequences of deportation may assuredly be grave, they are not imposed as a punishment." Reno v. American-Arab Anti-Discrimination Comm., 119 S. Ct. 936, 947 (1999) (citing Carlson v. Landon 342 U.S. 524, 537 (1952)). As the Court has explained, "[e]ven when deportation is sought because of some act the alien has committed, in principle the alien is not being punished for that act... but is merely being held to the terms under which he was admitted."[2] American-Arab AntiDiscrimination Comm., 119 S. Ct. at 947. Where, as here, there is not successive punishment, double jeopardy concerns are not implicated. See United States v. Ursery, 518 U.S. 267, 292 (1996).4. The Ex Post Facto Clause
 
 
 12
 Chavez-Murillo asserts, finally, that the IIRIRA violates the Ex Post Facto Clause because "there have been numerous cases where a LPR was convicted of a crime prior to the 1996 amendments, and at the time the act was committed, would have been eligible for a discretionary waiver of deportation under [8 U.S.C. S 1182(c)]."
 
 
 13
 We cannot fail to note that Chavez-Murillo is not of the class who would be affected by retroactive application of the 1996 amendments. He was arrested at the border more than a year after the IIRIRA took away the Attorney General's discretion to grant the relief he would seek. He thus has no standing to raise the issue of retroactivity.
 
 
 14
 Chavez-Murillo has made no colorable constitutional claim, and we are without jurisdiction to entertain his petition. See 8 U.S.C. S 1252(a)(2)(C). We, therefore, dismiss.
 
 
 15
 DISMISSED.
 
 
 
 NOTES:
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See FED. R. APP. P. 34(a); 9th Cir. R. 34-4.
 
 
 [1]
 In evaluating whether any of Chavez-Murillo's constitutional claims is colorable, we do not invoke the now defunct "hypothetical jurisdiction" doctrine. See Legal Aid Soc'y of Haw. v. Legal Servs. Corp., 145 F.3d 1017, 1029 (9th Cir. 1998). Rather, we do so to determine whether we have jurisdiction to consider the claims on the merits.
 
 
 [2]
 Obviously, we must decline Chavez-Murillo's invitation to reconsider the "nature of deportation."