Robert B. **ELLIOTT,**
Plaintiff-Appellant,

v.

The **UNIVERSITY OF TENNESSEE, et al., Defendants-Appellees.**

No. 84–5692.

United States Court of Appeals,
Sixth Circuit.

Argued May 10, 1985.

Decided July 9, 1985.

---

Avon N. Williams, Jr. (Lead), Williams & Dinkins, Russell T. Perkins, Judith Reed (argued), Nashville, Tenn., for plaintiff-appellant.

Alan Parker (Lead) (argued), Associate Gen. Counsel, Beauchamp E. Brogan, Knoxville, Tenn., G. Ray Bratton, Richard Glassman, Glassman, Jeter & Embry, P.C., Memphis, Tenn., George R. Fusner, Jr., White & Reasor, Nashville, Tenn., for defendants-appellees.

Before KEITH and MARTIN, Circuit Judges, and EDWARDS, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Robert B. Elliott appeals from an order of the district court granting summary judgment to the defendants on his claim that the defendants violated his civil rights.

Elliott is a minority employee of the University of Tennessee Agricultural Extension Service. He has been employed by the Service since 1966. On December 18, 1981, the Dean of the Service advised Elliott that he was to be terminated from his job due to inadequate work performance, inadequate job behavior, and incidents of gross misconduct. On December 22, 1981, Elliott filed an administrative appeal from the Notice of Pending Termination under the Tennessee Uniform Administrative Procedure Act. On January 5, 1982, Elliott filed his federal complaint that forms the basis of the present appeal.

Elliott's federal complaint alleges that in the past he made complaints to University of Tennessee officials regarding racial discrimination in the treatment of black leaders, students, and staff personnel in connection with 4–H club events and a series of racially derogatory acts on the part of University officials. One of Elliott's major complaints was a racial slur made by defendant Coley, a Service livestock judge, at an official Service event.

The federal complaint alleges that following Elliott's complaint regarding the Coley incident, defendants Downen, Luck, and

Shearon (University officials) conspired with defendants Murray Truck Lines and Korwin to have Elliott terminated from his job. Elliott recently had complained to Korwin, shop manager at Murray Truck Lines, regarding eight racially insulting signs in windows at Murray Truck Lines' place of business. The complaint alleges that the University officials conspired with Korwin to secure a letter from Korwin accusing Elliott of referring to Mr. Murray as a "white racist" and threatening him. Based on the Korwin letter, Downen placed a letter of reprimand in Elliott's job file.

The complaint also alleges that, because of Elliott's complaint regarding Coley, the University officials conspired with defendants Donnell, Johnson, Smith, Hopper, and Cathey, all of whom were members of the Agricultural Extension Service Committee in the county in which Elliott was employed, to have the Committee recommend to Downen that Elliott be terminated from his job. Two black members of the Committee refused to vote for Elliott's removal. All five white members, two of whom are related to Coley by marriage, voted for Elliott's removal.

The complaint next alleges that Elliott's immediate Supervisor, Shearon, and other University officials began a harassment campaign by requiring Elliott to produce mileage books when white employees were not subject to the same requirement; unjustifiably finding fault with his work; subjecting him to discriminatory job assignments; attempting to place pretextual supervisory complaints in his personnel file; and falsely accusing him of failure to carry out a specific job assignment.

The complaint alleges that at least one of the individual defendants was aware that Elliott was active in a federal lawsuit seeking to secure the right of blacks to gain membership in exclusively white country clubs in Gibson and Madison County, Tennessee, and that the present defendants' actions were designed in part to punish him for his efforts in that case.

Finally, the complaint alleges that the Service continues to discriminate against black citizens by refusing to implement an effective affirmative action plan; failing to integrate its homemaker demonstration clubs and other educational activities; refusing to integrate its 4–H clubs; refusing to address low minority participation in agricultural programs and community resource development programs; refusing to eliminate discrimination in promotion, training, and continuing education; refusing to eliminate discrimination in the establishment and operation of agricultural extension committees; and permitting discrimination by local white officials against black participants in educational programs.

The complaint seeks certification of a class of "persons in Tennessee who are similarly situated [as Elliott] and/or affected by the policies ... complained of herein which violate not only the rights of [Service employees] ... but also the rights of black infant and adult citizens who are intended beneficiaries of [the Service]...." The relief requested includes an injunction restraining the University of Tennessee, the Service, the University officials, and the Committee from continuing the discriminatory practices outlined above. Also requested is a preliminary and permanent injunction requiring defendants to cease attempting to discharge, cause the discharge of, or otherwise penalize Elliott on the basis of false allegations and other harassing actions. Finally, the complaint seeks attorneys' fees and one million dollars in damages. The complaint invokes jurisdiction under 28 U.S.C. §§ 1331 and 1341. Claims are asserted under 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, 2000d and e and under the first, thirteenth, and fourteenth amendments.

On January 19, 1982, the court entered a temporary restraining order prohibiting the defendants from taking any personnel action against Elliott. On February 23, 1982, the court withdrew the restraining order to permit the parties to proceed through the state administrative appeals process. The court emphasized that the withdrawal of the restraining order did not "in any fash-

ion adjudicat[e] the merits of this controversy."

After dissolution of the restraining order, the parties proceeded through the Tennessee administrative review process. The contested case provisions of the Tennessee Code provide for determination of the issues by an administrative judge who must be an employee of the affected agency or of the office of the secretary of state. Tenn.Code Ann. § 4–5–102(1) & (4). A party may move to disqualify an administrative judge for "bias, prejudice, or interest," Tenn.Code Ann. § 4–5–302(a), the administrative judge may not be a person who has been involved in the investigation or prosecution of the case, Tenn.Code Ann. § 4–5–303(a), and the administrative judge may not receive ex parte communications, Tenn. Code Ann. § 4–5–304(a). The parties have the right to be represented by counsel, Tenn.Code Ann. § 4–5–305(b), to receive notice of the hearing, Tenn.Code Ann. § 4–5–307(a), to file pleadings, motions, briefs, and proposed findings of fact and conclusions of law, Tenn.Code Ann. § 4–5–308(a) & (b), to request the administrative judge to issue subpoenas, Tenn.Code Ann. § 4–5–311(a), and to examine and cross-examine witnesses, Tenn.Code Ann. § 4–5–312(b). The administrative judge is bound by the civil rules of evidence except that evidence otherwise not admissible may be relied upon if it is "of a type commonly relied upon by reasonably prudent [people] in the conduct of their affairs." Tenn.Code Ann. § 4–5–313(1). An order issued by an administrative judge must include conclusions of law and findings of fact. Tenn.Code Ann. § 4–5–314(c). An initial appeal from an adverse decision by the administrative judge is to the agency itself or to a person designated by the agency. Tenn.Code Ann. § 4–5–315(a). Judicial review of the final agency decision may be had ·by filing a petition for review in the state chancery court within sixty days of entry of the agency's order. Tenn.Code Ann. § 4–5–322(b). The chancery court sits without a jury and is limited to a review of the administrative record to determine whether the agency decision is in violation of constitutional or statutory provisions or is arbitrary, capricious, or unsupported by substantial evidence. Tenn.Code Ann. § 4–5–322(g) & (h). Review of the decision of the chancery court may be had in the Court of Appeals of Tennessee. Tenn.Code Ann. § 4–5–323.

The administrative judge conducted a lengthy hearing in which Elliott's counsel examined nearly one hundred witnesses. The University alleged eight separate instances of poor job performance and sought approval of its decision to dismiss Elliott. Elliott defended against the charges by asserting, *inter alia*, that the accusations against him were racially motivated. The administrative judge issued an order upholding four of the eight charges but denying approval of the dismissal. Instead, the order directed that Elliott retain his position but be transferred to a different county. The decision of the administrative judge concluded that he had no jurisdiction to hear Elliott's claims of civil rights violations. Nevertheless, the claims of racial discrimination were considered "affirmative defenses" to the University's charges, and the administrative judge made the following finding:

> An overall and thorough review of the entire evidence of record leads me to believe that employer's action in bringing charges against employee ... [was] based on what it, through its administrative officers and supervisors perceived as improper and/or inadequate behavior and inadequate job performance rather than racial discrimination. I therefore conclude that employee has failed in his burden of proof to the claim of racial discrimination as a defense to the charges against him.

Elliott appealed this decision to the University of Tennessee Vice President for Agriculture, who concluded that the University's actions were not racially motivated and rejected the appeal. Neither Elliott nor the University filed a petition for review in the state courts.

Eighty-four days after entry of the administrative order, Elliott renewed action on his pending federal complaint. Elliott filed a motion for a temporary restraining order to prevent the defendants from transferring Elliott to a different county or, to the extent that Elliott already had been transferred, to restore him to his previous location. Specifically, the motion requested a restraining order because

> said decision of the Administrative Law Judge and the agency constituted an abuse of discretion, is contrary to law, and is not supported by reliable, probative, and substantive evidence. Said Administrative Law Judge and agency have demonstrated their unwillingness and/or inability to determine objectively and impartially the constitutional [and federal statutory claims] raised by the Plaintiff in his Complaint and therefore, said decision should be stayed until this Court can make a preliminary determination of the likelihood [of success on the merits] since only this Court can exercise the Article III powers which are peculiarly applicable to those constitutional and Federal claims.

The motion further particularly alleged that the "Administrative Law Judge's and Agency's decision and remedy was ... unconstitutional and unlawful in wrongfully rejecting said claims of racial discrimination by plaintiff despite clear evidence thereof."

■ The University of Tennessee opposed the motion for a restraining order and also filed a motion for summary judgment on the underlying complaint. Its memorandum in opposition to Elliott's motion and its motion for summary judgment asserted the same principles. The University claimed that the district court lacked jurisdiction to "review the merits" of the

final agency order because by state statute review may be had only in the Tennessee chancery courts and only on timely petition for review. The University also asserted that principles of res judicata [1] prevented "relitigation" of the claims of racial discrimination in federal court.

Elliott responded to the motion for summary judgment by arguing that to dismiss his federal claims in deference to the final agency order would be to "effectively confer Article III power upon an Administrative Law Judge who is an agent for the U.T. defendants in this case." Elliott concluded that the "Court has absolutely no basis upon which an award of summary judgment to defendants can be predicated."

On May 12, 1984, the district court granted the University's motion for summary judgment. The court adopted the two grounds of decision urged by the University. Although only the University had moved for summary judgment, the court granted summary judgment in favor of all defendants. Elliott then perfected this appeal.

We will assume, for the sake of argument, that Elliott's motion for a temporary restraining order may plausibly be read as asking the court to "review the merits" of the agency order and that Tennessee's procedural prerequisites somehow prevented a federal court from granting the restraining order. Making those assumptions, the most that can be said is that the court should not have granted a restraining order. That denial of relief, however, would not affect the viability of Elliott's underlying complaint.

Elliott's complaint does not ask for "review" of a state agency order. It asks for an injunction to prevent the defendants

---

**1.** Res judicata encompasses two forms of preclusion, claim preclusion under which "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action," *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981), Restatement (Second) of Judgments § 24 (1982), and issue preclusion,

under which a decision precludes relitigation of the same issue on a different cause of action between the same parties once a court decides an issue of fact or law necessary to its judgment.

*Duncan v. Peck,* 752 F.2d 1135, 1138 (6th Cir. 1985). Throughout this opinion, we will intend "res judicata" and "rules of preclusion" to refer to principles of both issue and claim preclusion.

from discharging him or "otherwise penaliz[ing] him pursuant to false allegations of inadequate job performance." The complaint also seeks one million dollars in damages. Elliott did not invoke the court's jurisdiction under the administrative review provisions of the Tennessee Code. He unambiguously invoked the jurisdiction of the federal courts pursuant to 28 U.S.C. § 1331 and 1343 and asserted claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, 2000d and e and under the first, thirteenth, and fourteenth amendments.[2]

Because Elliott's complaint does not ask for "review" of the agency order but does ask for a de novo federal determination that arguably could undermine the validity of the state order, the court correctly noted that an issue of res judicata arises. The court's analysis of the res judicata issue consisted of the following:

> This Court is convinced that the civil rights statutes set forth in Title 42 of the United States Code ... were not intended to afford the plaintiff a means of relitigating what plaintiff has heretofore litigated over a five-month period. Therefore, this Court should dismiss the case upon the doctrine of *res judicata.*

Unfortunately, the parties failed to advise the court of several cases which have rejected that position. In *Kremer v. Chemical Construction Co.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Court considered the relationship between

the guarantee of a trial de novo in Title VII actions[3] and the principles of res judicata and federal-state comity as embodied in 28 U.S.C. § 1738. The Court held:

> No provision of Title VII requires claimants to pursue in state court an unfavorable state administrative action.... While we have interpreted the "civil action" authorized to follow consideration by federal and state administrative agencies to be a "trial de novo," *Chandler v. Roudebush,* 425 U.S. 840 [96 S.Ct. 1949, 48 L.Ed.2d 416] (1976), ... neither the statute nor our decisions indicate that the final judgment of a state *court* is subject to redetermination at such a trial.

*Id.* at 469–70, 102 S.Ct. at 1891–92 (emphasis in original). In a footnote that accompanied this passage, the Court made explicit that which was implicit in its emphasis on the phrase "final judgment of a state *court.*"

> EEOC review of discrimination charges previously rejected by state agencies would be pointless if the federal courts were bound by such agency decisions.... Nor is it plausible to suggest that Congress intended federal courts to be bound further by state administrative decisions than by decisions of the EEOC. Since it is settled that decisions by the EEOC do not preclude a trial de novo in federal court, it is clear that unreviewed administrative determinations by state

**2.** The University's argument regarding the effect of the Tennessee review provisions may plausibly be read as an implicit articulation of the argument that the existence of a state remedy precludes resort to section 1983. That argument was rejected by the Supreme Court more than twenty years ago. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *see also Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (Title VII plaintiff who has pursued administrative remedies is entitled to trial de novo in federal court); *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (exhaustion of state administrative remedies is not a prerequisite to maintenance of a section 1983 action). Justice Frankfurter's dissent in *Monroe* took issue with the majority's principle, but his view has been resuscitated, in a constitutionalized form, only in the area of procedural due process. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68

L.Ed.2d 420 (1981); *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *see also Wagner v. Higgins,* 754 F.2d 186, 193 (6th Cir.1985) (Contie, J., concurring) (*Parratt* does not apply to violations of substantive constitutional rights).

**3.** The University makes the argument that "this is not a Title VII action" because, the University contends, Elliott's federal court complaint was untimely and he has not received a right to sue letter. Elliott asserts that the complaint was timely and that he has received a right to sue letter. For purposes of this appeal, we must treat this action as a Title VII action because the complaint unambiguously invokes Title VII and because the district court made no finding or conclusion with respect to timeliness or Elliott's receipt of a right to sue letter.

agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a state's own courts.

*Kremer*, 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7. The Court thus drew a sharp distinction between state court judgments, which are entitled to deference under the res judicata principles of section 1738, and unreviewed state administrative determinations which are not. *See also id.* at 487, 102 S.Ct. at 1900 (Blackmun, J., with Brennan & Marshall, JJ., dissenting) (recognizing distinction made by majority); *id.* at 508–09, 102 S.Ct. at 1911–12 (Stevens, J., dissenting) (same). That is precisely the distinction that this Court drew in *Cooper v. Philip Morris, Inc.,* 464 F.2d 9 (6th Cir.1972), which was cited with approval by the majority in *Kremer.*

The University recognizes, as it must, the general principle established by footnote 7 in *Kremer.* That principle, however, is not to be applied, the University argues, when the unreviewed administrative decision was rendered by an agency that is authorized to grant full relief, such as reinstatement and backpay, and that provides the litigants with elaborate adjudicative procedures. The University finds support for this argument in two aspects of the *Kremer* opinion. First, the University argues that the Court in footnote 7 implicitly equated "state administrative agency" with an agency that possesses powers similar to those possessed by the federal Equal Employment Opportunity Commission. Because the Commission has exclusively administrative rather than adjudicatory authority, the argument goes, the rule of non-preclusion announced in footnote 7 may be applied only to the unreviewed decisions of agencies that possess only administrative authority. Second, the University notes that in footnote 26 of *Kremer,* the Court cites *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), which states that res judicata principles apply to the decision of an administrative agency acting in "a judicial capacity." This citation is said to bolster the University's proposed distinction between the res judicata effect to be given the decision of an agency acting in a judicial versus an administrative capacity.

■ Both rationales for the University's distinction are without merit. First, the *Kremer* Court itself made plain in footnote 7 that its rule of non-preclusion with respect to unreviewed state administrative decisions applies to the decisions of those agencies that have full enforcement authority and provide full adjudicative procedures as well as to the decisions of agencies that lack those attributes. The Court cited four lower court decisions in support of the rule that it announced. Of those four cases, three approved a rule of non-preclusion even though the state agency had full enforcement authority and provided elaborate adjudicative procedures. *See Garner v. Giarrusso,* 571 F.2d 1330 (5th Cir.1978); *Batiste v. Furnco Construction Corp.,* 503 F.2d 447 (7th Cir.1974), *cert. denied,* 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 399 (1975); *Cooper v. Philip Morris, Inc.,* 464 F.2d 9 (6th Cir.1972). The Court in *Kremer* certainly did not have in mind, in footnote 7, the distinction urged by the University.

The University is also unaided by footnote 26. The context of the Court's citation of *Utah Construction* makes evident that the Court did not intend to adopt the University's proposed distinction. The Court cited *Utah Construction* in the course of stating that the New York administrative procedure, in combination with state judicial review of the administrative decision, did not offend due process. Thus, the citation of *Utah Construction* was in the context of a factual situation—a reviewed administrative decision—different from that implicated in the rule of non-preclusion announced in footnote 7—an unreviewed administrative decision. The citation also was made in the context of a legal issue—whether the procedures offend due process—different from that implicated in footnote 7—whether res judicata should ap-

ply. Footnote 26 in *Kremer* thus lends no support to the University's argument.

Finally, we note that in a post-*Kremer* Title VII decision this Court refused to give preclusive effect to the unreviewed decision of a state administrative agency that possessed the attributes which the University argues should exempt the agency from the dictates of *Kremer. See Smith v. United Brotherhood of Carpenters and Joiners,* 685 F.2d 164, 168 (6th Cir.1982). No argument advanced by the University has encouraged us to deviate from that decision.

■ The district court's holding that Elliott's Title VII claim is barred by res judicata must fall in light of the unambiguous princple enunciated in *Kremer.* The more difficult question is whether the court erred in dismissing Elliott's claims asserted under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. We conclude that the court erred in dismissing those claims.[4]

In *Loudermill v. Cleveland Board of Education,* 721 F.2d 550 (6th Cir.1983), *aff'd,* —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), we held that an unreviewed state administrative adjudication has no claim preclusive effect in a subsequent section 1983 action in federal court. *Id.* at 559. In dictum, the *Loudermill* panel majority drew a distinction between the claim preclusive effect and the issue preclusive effect of a prior, unreviewed state administrative adjudication, stating that such an adjudication should be accorded issue preclusive effect in section 1983 actions in federal court. *See id.* at 559 n. 12.

The Court cited *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), to support its view with respect to issue preclusion.

*Utah Construction* does not support the broad principle advanced in dictum in *Loudermill.* The *Utah Construction* Court stated:

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

384 U.S. at 422, 86 S.Ct. at 1560. This language certainly lends support to the view advanced in *Loudermill.* That language, however, must be read in its proper context. *Utah Construction* involved the collateral estoppel effect to be given a decision of the federal Advisory Board of Contract Appeals in a subsequent action in the Court of Claims. *See* 384 U.S. at 400, 86 S.Ct. at 1549. The Court did not address the deference that federal courts should give to the unreviewed findings of state administrative agencies in subsequent federal civil rights actions.[5]

The question whether a prior, unreviewed determination of a state administrative agency must be given preclusive effect in a subsequent federal civil rights action is a difficult issue that requires a careful analysis of Supreme Court teachings. The

---

**4.** Throughout the remainder of this opinion, we will refer primarily to the claim asserted under section 1983. Our reasoning and conclusion apply equally to the other statutory claims asserted by Elliott.

**5.** All of the cases the Court in *Utah Construction* cited in support of its proposition involved the application of preclusion principles to the prior determinations of federal agencies. *See Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940) (decision of the National Bituminous Coal Commission); *Hanover Bank v. United States,* 285 F.2d 455, 152 Ct.Cl. 391 (1961) (decision of the Tax Court); *Fairmont Aluminum Co. v. Commissioner,* 222 F.2d 622 (4th Cir.1955) (same); *Seatrain Lines, Inc. v. Pennsylvania R. Co.,* 207 F.2d 255

(3d Cir.1953) (decision of Interstate Commerce Commission). The Court included a "see also" cite to a diversity case that applied preclusion rules to the decision of a private arbitration panel. *See Goldstein v. Doft,* 236 F.Supp. 730 (S.D.N.Y.1964), *aff'd,* 353 F.2d 484 (2d Cir.1965), *cert. denied,* 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966).

For the reasons noted earlier in this opinion, we do not believe the Court at footnote 26 of *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), meant to authorize the application of *Utah Construction* to the unreviewed decisions of a state administrative agency when the claimant subsequently asserts a federal right in a federal court.

starting point for this analysis is *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). These cases held that a federal court adjudicating a section 1983 action must accord the same preclusive effect to the decision of a state court as the decision would be accorded by other courts of that state. Neither *Allen* nor *Migra*, however, requires that we give preclusive effect to the unreviewed findings of a state administrative agency. Although *Allen* and *Migra* recognized that the purpose of section 1983 was to provide a civil rights claimant with a federal right in a federal forum, the Court concluded that the legislative history of section 1983 was not so unequivocal as to effect an implied repeal of 28 U.S.C. § 1738 and the common law rules of preclusion that section 1738 directed the federal courts to respect. *See Allen*, 449 U.S. at 99, 101 S.Ct. at 417; *Migra*, 104 S.Ct. at 897.

■ The conflict between section 1983 and section 1738 that the Court resolved in *Allen* and *Migra* is not present when a federal court considers whether to give preclusive effect to the unreviewed findings of a state administrative agency. Section 1738 provides in relevant part:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the

courts of such State ... from which they are taken.

The "Acts, records and judicial proceedings" referred to in the statute are the "Acts of the legislature of any State" and the "records and judicial proceedings of any *court* of any such State," 28 U.S.C. § 1738 (emphasis added). The statute does not require federal courts to defer to the unreviewed findings of state administrative agencies. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 361 n. 6 (4th Cir.1985); *Moore v. Bonner*, 695 F.2d 799, 801 (4th Cir.1982); *see also Gargiul v. Tompkins*, 704 F.2d 661, 667 (2d Cir.1983), *vacated on other grounds*, —— U.S. ——, 104 S.Ct. 1263, 79 L.Ed.2d 670 *on remand*, 739 F.2d 34 (1984);[6] *Patsy v. Florida International University*, 634 F.2d 900, 910 (5th Cir.1981) (en banc), *rev'd on other grounds sub nom. Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 n. 1 (2d Cir.1978) (per curiam); *Mauritz v. Schwind*, 101 S.W.2d 1085, 1089–90 (Tex. Civ.App.1937). *Cf. Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 281–83, 100 S.Ct. 2647, 2660–62, 65 L.Ed.2d 757 (1980) (plurality opinion) ("[T]he critical differences between a court of general jurisdiction and an administrative agency with limited statutory authority forecloses the conclusion that constitutional rules applicable to court judgments are necessarily applicable to workmen's compensation awards.")[7]

---

6. *See* footnote 9 *infra*.

7. The Court in *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980) (plurality opinion), ultimately held that "Full faith and credit must be given [by the District of Columbia] to the determination that the Virginia [Workers' Compensation] Commission had the authority to make...." *Id.* at 282–83, 100 S.Ct. at 2661–62. It is unclear whether the Court believed this result was required by the full faith and credit clause of the Constitution, Art. IV, § 1, or the full faith and credit statute, 28 U.S.C. § 1738. The full faith and credit clause requires each state to give full faith and credit to the "judicial Proceedings" of another state. The full faith and credit statute requires every court within the United States to

give full faith and credit to the judicial proceedings of any *court* of another state. Although the *Thomas* Court cited section 1738, the Court's substantive discussion focused on the full faith and credit clause, *id.* at 279, 100 S.Ct. at 2659, and on the applicable "constitutional rules," *id.* at 282, 100 S.Ct. at 2661. The Court therefore must have: (1) regarded the District of Columbia as a "state" subject to both the full faith and credit clause and the full faith and credit statute; or (2) not considered or ruled on the difference in language in the clause and the statute. If the former, the *Thomas* case is inapplicable here because a federal court is bound only by the statute, which requires that we give full faith and credit only to the judicial proceedings of state courts. If the latter, we are unaware of any dispositive Supreme Court decision. We

The conclusion that section 1738 does not require that we give preclusive effect to the findings of a state administrative agency does not end the inquiry. Common law principles may require that we apply rules of preclusion. *See McDonald v. City of West Branch,* —— U.S. ——, ——, 104 S.Ct. 1799, 1802, 80 L.Ed.2d 302 (1984). In determining whether to create or apply a judge-made rule of preclusion in the circumstances presented by this case, it is appropriate to consider the question in light of the legislative history and purpose of section 1983.

In *Allen* and *Migra,* the Court stated in dictum that the legislative history and purpose of section 1983 could not override "traditional rules of preclusion." *See Allen,* 449 U.S. at 99, 101 S.Ct. at 417; *Migra,* 104 S.Ct. at 897. We do not believe that the Court's language may be read to prevent consideration of the history and purpose of section 1983 when a court is considering not whether to override a common law rule of preclusion but whether to develop such a rule in the first instance. *See McDonald v. City of West Branch,* —— U.S. ——, ——, 104 S.Ct. 1799, 1803, 1804, 80 L.Ed.2d 302 (1984).

As noted previously, the Supreme Court has stated that common law principles of res judicata may be applicable when an administrative agency "is acting in a judicial capacity." *See United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). The rule in *Utah Construction* has been applied primarily to the administrative decisions of *federal* agencies when principles of res judicata are asserted in a subsequent *federal* court proceeding. Rarely have courts considered whether a state administrative decision is entitled to preclusive effect when a claimant asserts a federal right in a subsequent federal action other than one based upon section 1983. Consequently, the question is not whether section 1983 can override an existing common law rule of preclusion, but whether we

therefore adopt the rule clearly articulated by

ought now to develop and apply such a rule in a section 1983 action.

The legislative history and purpose of section 1983 has been summarized by the Supreme Court:

The legislative history [of section 1983] makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts.

... The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, "whether that action be executive, legislative, or judicial." *Ex parte Virginia,* [10 Otto 339], 100 U.S. [339, 346, 25 L.Ed. 676 (1879)].

*Mitchum v. Foster,* 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). This view of the legislative purpose of section 1983 echoed the view expressed in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961):

It was not the unavailability of state remedies but the failure of certain states to enforce the laws with an equal hand that furnished the powerful momentum behind [section 1983].

. . . .

... It is abundantly clear that one reason the legislation was passed was to afford a federal right *in federal courts* because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies. *Id.* at 174–75, 180, 81 S.Ct. at 477–78, 480 (emphasis added). The legislative history

the Fourth Circuit.

and purpose of section 1983, as explicated by the Supreme Court, is incompatible with application of a judicially fashioned rule of preclusion that would bind a court considering a section 1983 claim to the unreviewed findings of a state administrative agency. Congress provided a civil rights claimant with a federal remedy in a federal court, with federal process, federal factfinding, and a life-tenured judge. The Court in *Allen* and *Migra* did not disagree with the reading of the legislative history and purpose of section 1983 as explained in *Mitchum v. Foster* and *Monroe v. Pape*. *See Allen*, 449 U.S. at 98–99, 101 S.Ct. at 416–417; *Migra*, 104 S.Ct. at 897. The conflict that animated the decisions in *Allen* and *Migra*—the conflict between section 1983 and section 1738 and common law rules of preclusion—is not present when the prior adjudication was conducted in a state administrative agency rather than a state court. In the absence of such a conflict, we decline to undermine the purpose of section 1983 by creating a rule that would give preclusive effect to the prior, unreviewed decision of a state administrative agency.

At least implicit in the legislative history of section 1983 is the recognition that state determination of issues relevant to constitutional adjudication is not an adequate substitute for full access to federal court. State administrative decisionmakers, unlike federal judges, generally do not enjoy life tenure. Because they are subject to immediate political pressures from which federal judges are immune, state administrative decisionmakers encounter more difficulty in achieving the broad perspective necessary to approach sensitively the issues raised by those whose claims often are dramatically anti-majoritarian. The importance of access to a decisionmaker who is insulated from majoritarian pressure is particularly important in those fact-intensive cases, such as race discrimination cases, in which factual findings of motive and intent play major roles in the litigation.

Of course, this argument has been rehearsed before in the context of the debate over the forum allocation decision as between federal and state courts. *See* Neuborne, *The Myth of Parity*, 90 Harv.L.Rev. 1105 (1977). The argument is no less valid for being repeated here. Although similar arguments for denying res judicata effect to state court judgments were rejected in *Allen* and *Migra*, that rejection, as we have noted, was based upon the congressional directive embodied in section 1738. That directive is not applicable here, and the very real differences between a state and federal forum legitimately play a role in the decision whether to create a rule that would give preclusive effect to the unreviewed findings of a state administrative agency.

Moreover, there are significant differences between the state judicial and administrative forums that counsel against federal court deference to the decisions of the latter even though Congress has required deference to the decisions of the former. Primary among these differences is the process for selecting the decisionmaker. State court judges, like federal judges, have been selected through a political process that places a premium on the candidate's ability to make difficult choices in the face of competing, often irreconcilable, highly desirable goals. In antiquarian terms, the political selection process places a premium on the candidate's practical judgment. By contrast, the process for selecting administrative decisionmakers is bureaucratic rather than political. As a result, the selection process places a premium on technical competence, narrowly conceived, rather than practical judgment. The candidate generally is expected to apply one regulatory scheme to a narrow range of possible factual situations. Consequently, the administrative decisionmaker, unlike the state or federal judge, is not selected on the basis of his or her ability to apply a broad range of principles to an ever-broadening range of social conflicts and to exercise the practical judgment necessary to reach a just result in a particular constitutional case. Although an agency decision generally is subject to review in the state's courts, the deferential standard

of review employed is not adequate fully to protect federal rights in light of the often fact-intensive nature of the constitutional inquiry.

■ The differences between the nature of the state administrative and federal judicial forums compel us to conclude that, regardless of the similarities in the formal procedures used in those forums, according preclusive effect to unreviewed state administrative determinations is incompatible with the full protection of federal rights envisioned by the authors of section 1983.

Our discussion of the differences between administrative and judicial forums should not be read as doubting the worth of state administrative determination of civil rights issues. Our rule ultimately is one that encourages resort to speedy, efficient state administrative remedies and thus maximizes the choices of forum available to the litigants. If the claimant prevails before the administrative agency, the defendant may appeal to the state courts and thus, pursuant to the rule in *Allen, Migra,* and *Kremer,* preclude federal court intervention. If the claimant loses before the agency, the claimant may either pursue an appeal in the state courts or bring an action in federal court. The rule of non-preclusion maximizes the forum choices by encouraging the claimant to pursue state administrative remedies when, if rules of preclusion were applicable, the claimant would forego the administrative adjudication and proceed immediately to federal court. *See McDonald v. City of West Branch,* —— U.S. ——, ——, 104 S.Ct. 1799, 1804 n. 11, 80 L.Ed.2d 302 (1984); *Gargiul v. Tompkins,* 704 F.2d 661, 667 (2d Cir. 1983), *vacated on other grounds,* —— U.S. ——, 104 S.Ct. 1263, 79 L.Ed.2d 670 *on remand,* 739 F.2d 34 (1984);[8] *Moore v. Bonner,* 695 F.2d 799, 802 (4th Cir.1982). Of course, it is the province of Congress, not the courts, to make forum allocation decisions. When the issue comes to us in the form of the question whether to create a common law rule of preclusion, we have no choice but to make the decision that best

comports with reason and the relevant statutory scheme. As we have shown, the legislative history of section 1983 supports, if it does not compel, the result we reach.

■ A rule denying preclusive effect to an unreviewed state administrative determination in a subsequent section 1983 action also has the salutary effect of preserving congruence between the rules of preclusion in Title VII and section 1981 (or 1983) actions. Claims under these statutes often are asserted in the same lawsuit. The Supreme Court has made clear that an unreviewed state administrative determination will not preclude later resort to Title VII, and we can find no reason why a different rule should apply to claims under section 1981 or 1983. One commentator has observed:

> Application of preclusion as to part of the case saves no effort, does not prevent the risk of inconsistent findings, and may distort the process of finding the issues. The opportunity for repose is substantially weakened by the remaining exposure to liability. Insistence on preclusion in these circumstances has little value, and more risk than it may be worth.

18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4471 at 169 (Supp.1985). Although this rationale for a rule of non-preclusion applies only when a section 1981 or 1983 claim is asserted together with a Title VII claim, the joining of those claims occurs in a non-trivial number of cases.

The decision we reach today is at odds with the result reached in other circuits; the existing plethora of views on the issue makes conflict inevitable. *See, e.g., Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42, 46 (2d Cir.1985) (giving preclusive effect to a state administrative determination on authority of *Utah Construction* ); *Gargiul v. Tompkins,* 704 F.2d 661, 667 (2d Cir.1983) (not giving preclusive effect to a state administrative determination because the claimant had not "cross[ed] the

---

**8.** *See* footnote 9 *infra.*

line between state agency and state judicial proceedings"; citing *Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 n. 1 (2d Cir.1978)), *vacated on other grounds,* —— U.S. ——, 104 S.Ct. 1263, 79 L.Ed.2d 670 *on remand,* 739 F.2d 34 (1984); [9] *Moore v. Bonner,* 695 F.2d 799, 801–02 (4th Cir.1982) (not giving preclusive effect to state administrative determination because contrary rule would encourage claimants to bypass agency remedies); *Steffen v. Housewright,* 665 F.2d 245, 247 (8th Cir.1981) (per curiam) (purporting to give preclusive effect to state administrative determination, but holding that agency's findings may be disregarded if they are "clearly erroneous"); *Patsy v. Florida International University,* 634 F.2d 900, 910 (5th Cir.1981) (en banc) (stating that state administrative determinations "carry no res judicata or collateral estoppel baggage into federal court"), *rev'd on other grounds sub nom. Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Anderson v. Babb,* 632 F.2d 300, 306 n. 3 (4th Cir.1980) (per curiam) (not giving preclusive effect to a state administrative determination because of the "deliberately intended political composition of the tribunal"); *Taylor v. New York City Transit Authority,* 433 F.2d 665, 670–71 (2d Cir. 1970) (giving preclusive effect to state administrative determination on authority of workers' compensation cases decided on the basis of full faith and credit clause). The analysis used and result reached in this opinion attempt to make sense of a complex area of the law and to remain faithful to both the teachings of the Supreme Court and the intent of Congress as manifested in section 1983 and its history.

The judgment of the district court is reversed.

9. The Supreme Court vacated *Gargiul* and remanded the case in light of *Migra.* On remand, the Second Circuit panel held, without analysis, that *Migra* barred all the claims asserted by the plaintiff. We believe that the principle for which we cite the original panel opinion in *Gargiul* is still good law. The original panel had held, in addition to the principle for which we cite the case, that a prior state *court* proceed-

In light of this disposition, the appellees' requests for attorneys' fees and costs for defense of a frivolous appeal are denied. Elliott shall recover the costs of this appeal.

ing does not bar federal court consideration of constitutional claims not actually litigated and determined in the state court proceeding. It is the latter principle that was rejected by the Court in *Migra* and for which the original *Gargiul* opinion was most likely vacated. There is nothing in *Migra* to cause the panel on remand to have questioned its holding with respect to an unreviewed state administrative decision.