John **PILAROWSKI**,
Plaintiff–Appellant,

v.

**MACOMB COUNTY HEALTH DEPT.**
and **Macomb County Board of
Commissioners**, Defendants–Appellees.

No. 86–1423.

United States Court of Appeals,
Sixth Circuit.

Argued March 13, 1987.

Decided March 15, 1988.

Rehearing and Rehearing En Banc
Denied April 12, 1988.

Thomas H. Bleakley, Bleakey & McKeen, P.C., James G. Gross (argued), Detroit, Mich., for plaintiff-appellant.

Robert J. Battista, Butzel, Long, Gust Klein & Van Zile, Mark Nelson (argued), Detroit, Mich., for defendants-appellees.

Before LIVELY, Chief Judge,
WELLFORD, Circuit Judge, and
CELEBREZZE, Senior Circuit Judge.

WELLFORD, Circuit Judge.

This is an employment discrimination case, brought pursuant to 42 U.S.C. § 1983,

in which plaintiff claimed he was discharged for exercising his First Amendment right to freedom of speech. The jury returned a verdict in favor of plaintiff, but the district court set the verdict aside and entered judgment for the defendants.[1] In granting judgment notwithstanding the verdict, the district court found that plaintiff had failed to prove that his discharge was based on an unconstitutional custom or policy of suppressing free speech. Before submitting the case to the jury, however, the district court denied the defendants' motion for summary judgment. Defendants maintained in the motion for summary judgment that an administrative adjudication of the Michigan Employment Relations Commission precluded further inquiry into the reasons for Pilarowski's discharge under collateral estoppel principles.

## I.

Some five years after being employed as an administrative assistant in the Macomb County Health Department, plaintiff began writing "letters to the editor," which were published in several local newspapers. Many of the letters were critical of actions taken by the Macomb County Board of Commissioners, the governing body of the county which controlled the health department funding. In January 1975 Dr. Leland Brown, Pilarowski's immediate supervisor, advised him to stop writing the critical letters to the papers, but Pilarowski continued to do so. On July 28, 1976, Dr. Brown discharged plaintiff for writing the letters. Plaintiff brought suit in state court and ultimately was ordered reinstated with back pay and benefits. *Pilarowski v. Brown*, 76 Mich.App. 666, 257 N.W.2d 211 (1977). After plaintiff returned to work, Dr. Brown resigned. Plaintiff continued sending faultfinding letters to the newspapers.

After his reinstatement plaintiff apparently assumed additional responsibilities under a series of temporary administrators of the health department. In 1978 the State of Michigan enacted a new public health code that required an extensive restructuring of the health services in Macomb County. M.C.L.A. 333.1101 *et seq.* The new code made significant changes in the method and amount of state funding for the county health department, requiring Macomb County to fund large portions of its health-related expenditures that formerly had been provided by automatic state disbursements. In January 1978 Macomb County created an umbrella agency, Health Services Administration (HSA), to centralize administration of both the county health department and its department of mental health. In creating HSA the county sought to strengthen administrative resources of the health department generally, and to provide the means for compliance with additional reporting requirements of the new code. Plaintiff was an unsuccessful applicant for the position of director of HSA. Over the next four years several new administrative positions were created within HSA and filled by persons other than Pilarowski. At trial, plaintiff contended that some of these positions were created to reduce his responsibilities. Plaintiff continued to write the same type of letters to the editor during this period of transition.

In 1981 plaintiff was a member of his union's bargaining committee as the union and the county worked on a collective bargaining agreement. The county contended that there was an agreement for a news blackout during negotiations, and that plaintiff violated the blackout by publishing another letter to the editor. Plaintiff maintained that there had been no such agreement at the time of the publication and that the county's negotiator had attempted to impose the blackout for the sole purpose of stopping his letter writing.

One of the Commissioners, Dilber, testified that a considerable time after the labor negotiations had concluded in December of 1981, he overheard an informal discussion between two other Commissioners, Beck

---

1. The parties stipulated that Macomb County is actually the only defendant. (See plaintiff's brief, footnote one.)

and Grove, (the only discussion he had ever heard concerning Pilarowski) indicating that the Health Department "hasn't gotten rid of Pilarowski yet," but "there were ways to work this out." Both Beck and Grove denied that such a conversation ever took place.

In August 1982 the director of HSA proposed several reductions in staff to avoid a projected budget deficit in the Department of Health. If it occurred, such a deficit would violate state law, and the Health Department had exhausted its reserve of general funds. The Macomb County Board of Commissioners adopted the director's recommendation for a reduction in the budget, necessitating lay-offs.

The Health Department was not the only branch of county government at the time affected by the budget crisis and the need for reduction in staff. During the prior year (1981–1982) 32 positions were eliminated in the Health Department. In August of 1982 by a vote of 16 to 9, the Commissioners adopted a revised budget whereby a number of Health Department positions were designated for lay-offs.[2] No names of any specific individuals in the department were mentioned in the motion to adopt an amended budget that would require lay-offs in the Health Department. Plaintiff was the only administrator in the Health Department subjected to this lay-off; the other affected employees were dentists and dental assistants. The budgetary action of the Commissioners, however, did not name Pilarowski as a person to be eliminated by reason of the reduction in force.

Within a few months after Pilarowski was terminated, HSA was abolished, and "plaintiff's position was never reconstituted ... four or five people [are now] performing the tasks" which in whole or a part had been assigned to plaintiff. (Plaintiff's brief, p. 15). Before commencing the present action in district court plaintiff appealed his discharge to the Michigan Employment Relations Committee (MERC). Following a hearing, MERC rendered a de-

cision finding that plaintiff was not terminated because of his union activities, and noted that the county had shown legitimate budgetary concerns as a basis of its actions. Among other findings, the administrative law judge found that "[t]he record establishes that there was a need for economy on the part of the County ... an absence of evidence of animosity towards [Plaintiff] ... the elimination of [Plaintiff's position] was the result of County reorganization ... [and] it is inconceivable that the County Board of Commissioners undertook extensive reorganization ... as a pretext in order to eliminate [Plaintiff]." Plaintiff did not challenge the findings of the ALJ or appeal the MERC decision to the Michigan state courts as he was permitted to do under Michigan procedure.

In addition, plaintiff grieved his discharge under provisions of the collective bargaining agreement with Macomb County. The arbitrator found that the economic reasons given for plaintiff's discharge were authentic and reasonable and that there was no evidence to support Pilarowski's claim that he was terminated for exercising his First Amendment rights. At the arbitration hearing the argument presented by plaintiff was that he had been intentionally discharged through a "concerted effort by the Employer to get rid of him *for his letter writing* and union activity." J/A 297. Proof of both activities, including the alleged brief discussion between Commissioner Beck and Commissioner Grove about getting rid of Pilarowski more than a year and a half before the termination occurred, was presented to the arbitrator. The collateral estoppel argument presented by defendants rested on their claim that the unappealed MERC decision precluded further litigation with respect to the good cause basis for plaintiff's discharge, and that this was further supported by the findings of the arbitrator that there was good cause for the discharge not related to Pilarowski's letter writing and statements made during prior labor negotiations.

---

**2.** Commissioner Dilber (plaintiff's witness) voted for the budget adjustment and consequent lay-off requirement. Commissioner Grove voted against the reduction.

## II.

Whether or not we adopt defendants' argument that plaintiff should be collaterally estopped from pursuing his claim of an improper discharge because of his letter writing activities, we find (as did MERC and the arbitrator) that the proof in this case is insufficient to establish that plaintiff's First Amendment activities were established as a cause of his termination by the Macomb County Commissioners. Assuming that the alleged conversation did in fact take place between Beck and Grove, two of the twenty-five commissioners, more than a year and a half before the termination took place, there is uncontradicted proof that budget constraints and cutbacks were necessary and mandated in the Health Department and many other departments of Macomb County in August of 1982, and that the Commissioners took budgetary action without specific reference to the individuals who would be affected by the necessary budget reductions. One of the two commissioners alleged to be attempting to "get rid" of plaintiff voted against the reduction ordered. The policy action taken by the County Board of Commissioners, then, was to reduce the budget without specific reference to plaintiff. In order for the Board of Commissioners to be liable for the discharge, plaintiff must present credible proof that the decision to discharge him was made "by reason of his exercise of constitutionally protected First Amendment freedoms." *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); *see also Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972). Plaintiff must, indeed, go further and carry the burden to establish that his "conduct was a 'substantial factor'—or, to put it in other words, that it was a 'motivating factor' in the

Board's decision...." *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576 (footnote omitted). We are satisfied that the record fails to support plaintiff's contention as to the causation factor in this case with respect to the County Board's decision. Pilarowski's evidence, given a favorable construction, was insufficient to demonstrate that the County Board possessed the improper motive alleged when it approved the necessary budget cuts affecting the Health Department.[3]

The Supreme Court has determined that a local government may not be held liable under § 1983 based upon a *respondeat superior* theory simply for having an employee or employees who may commit a wrong. *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). We accordingly conclude that the district court was not in error in granting defendants' motion for judgment notwithstanding the jury verdict. We reach this conclusion after reviewing the evidence in the light most favorable to the plaintiff, including the evidence of the previous successful state court suit brought by Pilarowski against the County, his failure to attain promotions, removal or reassignment of some of his job responsibilities, and the proof concerning alleged adverse feelings and expressions of several Macomb County officials directed against plaintiff.

The district court found that plaintiff had presented proof that "certain individuals who were not named as defendants" may have been motivated to terminate his employment by reason of his letter writing activities, but that they had not been the policymakers who might bind the defendant County by reason of their actions under *Monell.*[4] The district court also cited *Bennett v. City of Slidell,* 728 F.2d 762, 767

---

3. It may be, although it is not necessary for us to decide this issue, that certain individuals associated with defendant Macomb County may have acted with the requisite improper animus with respect to Pilarowski's termination. Plaintiff's evidence was insufficient to establish, however, that Health Department officials Hill and/or Lafferty were acting as employment policymakers for Macomb County. *Pembaur v.*

*City of Cincinnati,* 475 U.S. 469, 483 n. 12, 106 S.Ct. 1292, 1300 n. 12, 89 L.Ed.2d 452 (1986).

4. "Some individual Macomb County employees," the district court found, "were offended by Mr. Pilarowski's letter writing activities and seemingly sought to have his employment with the Health Department terminated."

(5th Cir.), *reh'g denied*, 735 F.2d 861 (1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985), in support of this ruling that the injury suffered (the termination) was not shown to be "fairly attributable to the government itself," and that Macomb County could not be held liable under "a *respondeat superior* theory of liability." He concluded that it had not been demonstrated by the plaintiff that the commissioners, who were the County policymaking body, had delegated to any employee in the Health Department such authority with respect to termination of any given individual within that department, including Pilarowski.

We find no error in this aspect of the district court's decision, which we interpret to hold that evidence of action taken by an individual non-policymaking supervisor (not a defendant) was not to be considered the act of the defendant in the case. Pilarowski thus was held to have failed to establish the requisite causal link between his First Amendment activities and the action taken by the named defendant, the Macomb County Board of Commissioners. See *Mt. Healthy, supra,* and *Monell, supra.* In our view the record does not support the claim that defendant Board used the budget cuts as a subterfuge to violate Pilarowski's constitutional rights.

Even if the district court's decision were properly interpreted, as indicated by the dissent, to suggest that there was sufficient evidence to support a conclusion that defendant Board, not unnamed individuals within the Health Department, placed plaintiff on indefinite lay-off on a pretextual basis, a different result would not be mandated. In our view, the dissent's interpretation is not the correct one,[5] but we would affirm the judgment notwithstanding the verdict even if we were to accept that interpretation. As previously indicated, we find that the record simply is

insufficient to support a conclusion that *the Board's action* in question in adopting budget cuts was motivated by Pilarowski's letter writing activity, or that a desire to "get rid" of him was a substantial factor or a causative factor in the Board's decision.

If a lower court's judgment is proper, this court can affirm, even if the court's decision was based upon an incorrect application of law. *Dandridge v. Williams,* 397 U.S. 471, 475–76 n. 6 [90 S.Ct. 1153, 1156–57 n. 6, 25 L.Ed.2d 491] (1970); *Helvering v. Gowran,* 302 U.S. 238, 245 [58 S.Ct. 154, 157, 82 L.Ed. 224] (1937).

*United States v. Bank of Celina,* 823 F.2d 911, n. 5 (6th Cir.1986), disposition noted at 786 F.2d 1166 (1986). *See also Stelos Co. v. Hosiery Motor–Mend Corp.,* 295 U.S. 237, 55 S.Ct. 746, 79 L.Ed. 1414 (1935). *See Neely v. Martin K. Eby Const. Co.,* 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967); *Howes v. Great Lakes Press Corp.,* 679 F.2d 1023, 1029 (2d Cir.), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982); *cf. Cansler v. Grove Manufacturing Co.,* 826 F.2d 1507 (6th Cir.1987), as to this court's authority to direct or to approve granting of JNOV.

### III.

We therefore find no error in the reversal of the jury verdict for insufficiency of proof with respect to the motivating cause of the budgetary cutback affecting Pilarowski. Furthermore, while we do not find it necessary to decide the collateral estoppel issue raised by defendants, we are persuaded that defendants' argument in this respect has considerable merit.

Plaintiff, in the process of presenting his charge to MERC that defendants were guilty of a violation of the employment agreement, presented evidence of claimed hostility towards him and that the budget crisis and reorganization of the Health De-

---

**5.** The district court concluded, among other things:

Having carefully examined this evidence, the Court finds that as a matter of law, it is insufficient to establish liability as against the County of Macomb. The plaintiff simply *failed to demonstrate any connection* between these events [firing in 1976; seeking to "silence" him; diminishing job responsibilities;

and the Back–Grove December, 1971, discussion] and the Court is unwilling to assume such a relationship.

(Emphasis added). The district court also pointed out the *"unrelated actions* of a limited number of individual employees" in denying *respondeat superior* liability against the County. (Emphasis added).

partment constituted a pretextual basis for his discharge. The ALJ found in considering plaintiff's charge of wrongful termination that there was a genuine economic necessity for cutbacks and an "absence of animosity" towards Pilarowski. Plaintiff did not appeal this administrative finding under the MERC process. The findings that no contractual violation occurred, that just cause for Pilarowski's discharge existed, and that the discharge did not arise out of animosity, being unappealed, may establish a basis for the preclusive effect of such a decision. *See Senior Accountants, Analysts & Appraisers Association v. City of Detroit,* 399 Mich. 449, 458, 249 N.W.2d 121, 124–25 (1976).[6]

In addition, plaintiff filed a grievance over his discharge and pursued it to arbitration. Here again, in arbitration plaintiff went into his letter writing proclivity, his feeling that county officials resented this activity and were therefore hostile towards him, and that this hostility brought about an improper discharge based upon exercise of his constitutional rights. The arbitrator characterized plaintiff's claim as being that his "layoff was discriminatory and punitive" by reason of the exercise of his freedom to make public his criticism of Macomb County officials and their policies. J/A 295. He relied upon the Dilber proof as well as the proof about animosity due to his union activity, which was the same proof presented to the jury in this case. Pilarowski relied on a claim of retaliation in his claim before the arbitrator. Defendants' position was that plaintiff had failed to prove that his layoff "was improper."

The arbitrator assumed that plaintiff's contentions about hostility may have had some basis, stating that "[f]rom the nature and extensiveness of the Grievant's letter-writing alone, it must be assumed that there was at least some level of negative feelings toward him in some quarters of the County administration." He decided,

however, as we have concluded, that there was no "persuasive evidence" of "association," no causation demonstrated between any "negative feelings" toward Pilarowski and his layoff. While the arbitrator's decision may not constitute a bar to plaintiff's raising similar issues under § 1983, it strongly corroborates the state MERC decision, adverse to Pilarowski, which held the lay-off to be a justified action.

The collateral estoppel issue is properly before us even though defendants did not file a cross-appeal. They raised the issue in their motion for summary judgment and it may present an alternative ground in support of the district court judgment. *United States v. American Railway Express Co.,* 265 U.S. 425, 435–36, 44 S.Ct. 560, 563–64, 68 L.Ed. 1087 (1924).

In denying the defendants' collateral estoppel-based motion for summary judgment, the district court relied principally on our decision in *Elliott v. University of Tennessee,* 766 F.2d 982 (6th Cir.1985). In *Elliott* we held that unreviewed state administrative determinations should not be given preclusive effect in subsequent § 1983 actions. The Supreme Court reversed this holding in *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Although agreeing that unreviewed state administrative determinations do not preclude a trial de novo of Title VII claims in federal court, the Supreme Court concluded that such determinations may preclude a second trial of the same issues in federal court where the claims are based on the Reconstruction civil rights statutes, including § 1983. Resolution of this issue turns on the preclusive effect to which the determinations would be entitled in the appropriate state courts. 106 S.Ct. at 3225–27.

The district court recognized that the Michigan Supreme Court had held in *Senior Accountants, Analysts & Appraisers*

---

**6.** Plaintiff cites *Walker v. Wolverine Fabricating & Manufacturing Co.,* 425 Mich. 586, 391 N.W.2d 296 (1986), for the proposition that collateral estoppel may not be accorded agency decisions such as that of MERC, in cases of this nature. *Walker,* however, was concerned with the nature of a Michigan circuit court's statutory review function and did not involve collat-

eral estoppel effects of MERC proceedings. The MERC decision in this case held that plaintiff was not discharged for union activities or for animosity related to his union activities. We did not render our decision in the instant case based upon application of collateral estoppel principles in any event, but indicated a remand may have been indicated.

*Association v. City of Detroit,* 399 Mich. 449, 249 N.W.2d 121 (1976), that unreviewed factual determinations by MERC are entitled to preclusive effect when an action in a state court rests on the same questions of fact. However, the district court felt that this court's *Elliott* decision required a different rule when the subsequent action is brought in federal court.

The district court did not have the benefit of the Supreme Court's decision in *Elliott* or the decision in *Polk v. Yellow Freight System, Inc.,* 801 F.2d 190 (6th Cir.1986), when it denied the defendants' motion for summary judgment. In *Polk* we ruled that federal courts must apply *Senior Accountants* and other Michigan cases dealing with collateral estoppel-based preclusion. *Id.* at 193–94.

Had we not decided that the grant of judgment notwithstanding the verdict was warranted for the reasons heretofore stated, we would have been called upon to effect a remand so that the district court might have reconsidered the collateral estoppel issue in light of the authorities and reasons herein set out.

We AFFIRM the judgment of the district court for defendants.

LIVELY, Chief Judge, dissenting.

Since I believe the majority has seriously misapplied an important rule of law, I respectfully dissent.

### A.

The majority concludes that there was insufficient evidence that Pilarowski's "First Amendment activities were established as a cause of his termination by the Macomb County Commissioners." *Ante* p. 1284. However, that was not the basis of the district court's granting the defendants' motion for judgment notwithstanding the verdict. The district court specifically found that there was sufficient evidence "to support the conclusion that defendants' argument that plaintiff was placed on indefinite layoff due to a budget deficit was pretextual and that plaintiff would not have been fired but for his letter writing activities." Joint Appendix at 209E. The motion for judgment notwithstanding the

verdict was granted because the plaintiff chose to sue only the county rather than individual members of the Board of Commissioners or Health Department and, in doing so, failed to "identify the existence of a governmental policy and connect that policy to the particular injuries which he suffered." *Id.* This statement identified a requirement for maintaining an action against a municipality under section 1983. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). However, I believe the district court and the majority have misapplied the *Monell* "policy or custom" requirement in this case.

### B.

In *Monell* the Supreme Court overruled *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), insofar as it held that local governments are not among the "persons" to which 42 U.S.C. § 1983 applies. In holding that municipalities may be sued directly under § 1983 the *Monell* Court limited liability to those situations where a local government acts pursuant to "official policy" or governmental "custom." It made clear, however, that a "custom" need not have received formal approval of the decision-making authority of the municipality. On the other hand, the Supreme Court determined that a local government may not be held liable under § 1983 based on a *respondeat superior* theory for simply having an employee who commits a wrong. *Id.,* 436 U.S. at 690–95, 98 S.Ct. at 2035–38. The Court stated in *Monell* that it did not address "what the full contours of municipal liability under § 1983 may be." *Id.* at 695, 98 S.Ct. at 2038.

The Supreme Court has continued to explore the contours of municipal liability since *Monell. E.g., Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (an action of city council rendered municipality liable); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (same); *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (existence of municipal policy of inadequate training may not be inferred from misconduct of a single police officer); *Pembaur v.*

*City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (municipality may be liable for single act taken subject to a course of action directed by those who establish governmental policy). The consistent theme through all decisions since *Monell* is that municipal liability under § 1983 attaches only to acts of a municipality as distinguished from acts of municipal employees. Liability does not require a formal act of the governing body of the municipality; it may be based on actions of other officials "whose acts or edicts may fairly be said to represent official policy." *Pembaur,* 106 S.Ct. at 1298–99, quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

The district court misapplied *Monell* and its progeny in this case. Pilarowski was terminated pursuant to an action of the ultimate governing authority of Macomb County, its Board of Commissioners. There could be no doubt that this was an act of the county, not that of an employee. Liability did not depend upon a finding that the county had adopted a policy of suppressing free speech. Only four members of the Court in *Pembaur* agreed on the authority that a "policymaker" must possess when municipal liability is predicated on the single act of such an official. However, six Justices agreed to this statement:

> No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy.

106 S.Ct. at 1298 (citations omitted). *Pembaur* teaches that the acts of a properly constituted legislative body necessarily reflect official government policy. It is only when an alleged constitutional violation is caused by the conduct of a municipal employee that a separate inquiry into the existence of a municipal policy or custom is necessary in order to determine whether the act of the employee can be properly attributed to the municipality itself. Under this test, the single act of the Macomb County Board of Commissioners "unques-

tionably constitute[d] an act of official government policy."

The district court erred in requiring plaintiff to demonstrate the existence of an unconstitutional custom or policy where the claimed deprivation of First Amendment rights was based on an act of the legislative body of the county. This case is similar in many respects to *Williams v. City of Valdosta,* 689 F.2d 964 (11th Cir.1982), where the court reversed the district court's entry of judgment notwithstanding the verdict. In *Williams* the court of appeals applied *Monell* in a manner that anticipated the Supreme Court's decision in *Pembaur.*

Since I believe that the district court's erroneous view of *Monell* was the sole basis for granting the defendants' motion for judgment notwithstanding the verdict, I would reverse the judgment of the district court and remand with directions to reinstate the verdict unless that court determines, upon reexamination of the issue, that it erroneously denied the defendants' motion for summary judgment on collateral estoppel grounds.